Arnold L. Fein, J.
There are two primary issues raised on the motion and cross motion for dismissal of the complaint and for partial summary judgment. These are: (1) whether plaintiff Wien, as a limited partner of Chelsea-Candide Com *227 pany, has the standing to prosecute this action on behalf of the partnership and (2) whether this court has jurisdiction over the claims asserted or whether they are matters concerning which the doctrine of Federal pre-emption requires that they must first be considered by the Federal National Labor Relations Board.
There is no real issue concerning the essential facts. Chelsea-Candide, a New York limited partnership composed of 137 partners, produced a musical, first off, then on Broadway. The general partners of Chelsea-Candide are defendants Chelsea Theater Center and Sonjud Theatrical. The gravamen of the complaint is that Chelsea-Candide was caused significant financial loss by a condition included at the behest of defendants Arons and Jaffe, as officers of Local 802 (the American Federation of Musicians) in a collective bargaining agreement between Local 802 and the League of New York Theatres and Producers, Inc. That condition sets forth the minimum number of musicians which must be employed in musical productions; these mínimums being concededly fixed by the theatre in which the show is presented. Briefly, plaintiff asserts that so doing requires the hiring and payment of wages to musicians who are neither required nor used in the production, all without reference to the true needs of the production. There are collateral claims made, arising out of Chelsea-Candide’s physical alteration of the theatre concerned, which lessened the number of seats and whether the union’s failure to modify, downward, the minimum number of musicians under these circumstances was improper and whether there was an agreement by the union to do so, upon which it reneged.
The initial question concerning plaintiff’s right, as a limited partner, to maintain this action must be determined by reference to the recently amended section 115-a of the Partnership Law and to the leading cases which preceded enactment of that section, specifically Riviera Congress Assoc. v Yassky (18 NY2d 540) and the cases interpreting it, specifically Silver v Chase Manhattan Bank (44 AD2d 797). Section 115-a, enacted with the intent of codifying the rule in Riviera, provides in substance that a limited partner may maintain a derivative action on behalf of the partnership and that (subd 32), "In any such action, the complaint shall set forth with particularity the efforts of the plaintiff to secure the initiation of such action by the general partner * * * or the reasons for not making such effort.” In the instant complaint the allegation is *228 made that, "Plaintiff has demanded heretofore in writing that the general partners institute suit against defendant Union and has been advised in writing of their refusal to take such action”. Inasmuch as a complaint need not set forth more than statements "sufficiently particular to give the court and parties notice of the transactions * * * intended to be proved and the material elements of each cause” (CPLR 3013) the above allegation would seem sufficient. The fact of the request and refusal have been demonstrated so that summary judgment could not be granted on that ground. Defendants seem to argue, on this point, that it must also be demonstrated, to trigger a limited partner’s right to sue under section 115-a, that the general partner’s refusal was improper or that there is a general consensus among some unspecified number of the partners that the action should be brought or that the general partners consent thereto or are unable to bring the action. The statute does not so provide. Nor does the reasoning behind its enactment which in effect, was to afford limited partners essentially the same rights as shareholders in a corporation with respect to wrongs against the entity and remedies available (see NY Legis Doc, 1967, No. 65[B], pp 46-48). Accordingly, the motion, insofar as it is based upon the claimed lack of standing, is denied.
With respect to the claim of Federal pre-emption of the field, plaintiff asserts that, by virtue of actions taken in prior proceedings herein, defendants are barred from so claiming. Following commencement of this action the union filed a petition to remove this action to the Federal courts on this basis. Plaintiff then applied for a remand and following oral argument of that motion, by stipulation, the union’s removal petition was withdrawn "with prejudice” and the stipulation "so ordered” by that Judge. Whether as plaintiff asserts the Federal District Judge ordered the remand on the ground that no Federal question was present or whether as the union asserts the remand was because removal on petition could not be had where the Federal court’s jurisdiction was contested and to enable the union to move to dismiss here, is not determinable on the papers submitted.
But at the least the above-conceded sequence of events indicates that the claim of Federal jurisdiction is not patent. The complaint is not bottomed on claims of violation of any Federal statute. Rather, it asserts tortious conduct by the union in its enforcement of the contractual provision, alleging *229 that a requirement that a fixed number of musicians be hired and paid irrespective of whether or not they actually work violates the common law and section 340 of the General Business Law. The plaintiff’s claims are, with respect to these issues, analogous to those in Opera on Tour v Weber (285 NY 348). There the issue was the propriety of the union’s compelling the use of musicians where the producer used recorded music. The court held such union conduct was unlawful and that the dispute was not a labor dispute. This reasoning was followed in General Teleradio v Manuti (284 App Div 400, on remand 205 Misc 655). There the union sought to compel television and radio stations to hire live musicians instead of utilizing recorded music. Despite the fact that this violated the Lea Act, (US Code, tit 47, § 506), State court jurisdiction was upheld. Other State courts have reached similar conclusions (see Haverhill Strand Theatre v Gillen, 229 Mass 413; La Fayette Dramatic Prods. v Ferentz, 305 Mich 193).
Here, the defendant union points to the fact that section 8 (subd [b], par [6]) of the Labor Management Relations Act (US Code, tit 29, subd [b], par [6]) makes it a violation of Federal law for a labor union "to cause or attempt to cause an employer to pay * * * any money * * * in the nature of an exaction, for services which are not performed or not to be performed”. Although the complaint does not so allege, the union claims that plaintiff’s complaint is really as to an alleged violation of this section. The union argues that so long as union activity is "arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board”. (San Diego Bldg. Trades Council v Carmon, 359 US 236, 245.) However, it is clear and has been often held that where, in the State court action, the relief sought is money damages, with some basis in common-law tort (Automobile Workers v Russell, 356 US 634), or where there are significant State interests "deeply rooted in local feeling and responsibility” present (see San Diego Bldg. Trades Council v Carmon, supra, p 244), there is at least concurrent State court jurisdiction. The State courts may also issue a preliminary injunction, where the conduct of the union constitutes a tort and the dispute is found to be not truly a labor dispute (Barclay’s Ice Cream Co. v Local 757 of Ice Cream Drivers & Employees Union, 51 AD2d 516). Most recently a unanimous United States Supreme Court has ruled that the Federal pre-emption *230 doctrine is not to be rigidly applied to all matters having any contact with the employer-employee relationship, particularly where a common-law tort is alleged and State interest and public policy are involved (Farmer v United Brotherhood of Carpenters & Joiners of Amer., 430 US 290). The State interest here is present both by virtue of t the claimed violation of section 340 of the General Business Law and the broad impact of the contract provision upon the theatre; an industry of great economic and artistic significance to the city and State. There is manifestly State interest and concern with the compulsion to hire and pay employees although it is known that they will not and they do not work (Opera on Tour v Weber, supra; General Teleradio v Manuti, supra).
Nor is the union on better ground in its assertion that the court lacks subject matter jurisdiction under the Donnelly Act (General Business Law, § 340 et seq) because subdivision 3 of section 340 provides that the Donnelly Act shall not apply to bona fide labor unions. The law is well settled that the exemption does not obtain where the conduct complained of is alleged to be unlawful or to obtain an unlawful objective (State of New York v Milk Handlers & Processors Assn., 52 Misc 2d 658, affd 28 AD2d 971; People v Wisch, 58 Misc 2d 766). Equally untenable is the union’s assertion that jurisdiction is lacking and the complaint defective because of the failure to allege that notice of the commencement of the action has been given to the Attorney-General as directed by subdivision 5 of section 340 of the General Business Law. Failure to give such notice does not render a complaint defective. The requirement of notice is solely to apprise the Attorney-General of the action. (Columbia Gas of N. Y. v New York State Elec. & Gas Corp., 28 NY2d 117.)
Accordingly, defendants’ motion to dismiss the complaint is denied.
Plaintiff’s cross motion for partial summary judgment on the issue of liability is also denied. Clearly issues of fact are present concerning the claimed breach of agreement to reduce the number of musicians necessary. The union denies any agreement was made. Whether it was reasonable for the union to decline a reduction, in view of the alterations of the theatre, assuming the validity of the agreement, is also not established sufficiently to warrant judgment on that ground. Manifestly negotiation as to the number of musicians to be *231 hired is a matter for negotiation. It cannot be disputed that this seeks a legitimate end, the promotion of the use of musicians in the theatre. Whether this is what occurred is not determinable solely on the papers submitted. In this respect the needs of the industry and the union are clearly pertinent. Basic to resolution of this action and plainly in dispute is whether the union required and the employees obtained payment for nonwork. The attorneys’ affidavits, the only affidavits submitted on both sides, are neither appropriate nor useful in deciding this hotly disputed question.