OPINION OF THE COURT
Joseph D. Quinn, Jr., J.
At issue is whether the parties have presented this court with a live controversy in seeking declarations as to whether, on conceded facts, a by-law of defendant, a voluntary, domestic, not-for-profit corporation formed by real estate brokers engaged in business in Dutchess County, limiting the type of signs which may be displayed upon properties listed for sale, violates section 340 of the General Business Law, the so-called Donnelly Act, New York’s antitrust law. The issue is tendered to the court in an agreed statement of facts.
The seven plaintiffs here are all Dutchess residents and real estate brokers licensed in New York. Each is a member in good standing of the corporate defendant, and six of them were charter members and original incorporators of defendant. All but one of them, Emans, are also affiliated with Century 21, a national organization of real estate brokers. Of those six, all but Friedman had membership in defendant corporation before becoming connected with Century. Emans, also associated with Gallery of Homes, a national organization of brokers, which, like Century, engages in large scale advertising programs, subsequently *68 became a member of defendant. Both Century and Gallery provide their members with distinctive signs to be used in promoting the sale of properties.
Chartered in 1976, defendant Multiple Listing supplanted an entity known as Multiple Listing Committee of the Dutchess County Board of Realtors, Inc., which had been “franchised” earlier by the National Association of Realtors. Under obtaining rules of the National Association of Realtors, membership in the Dutchess County Board of Realtors was a prerequisite to affiliation with Multiple Listing Committee. What is more, those rules are said to have proscribed the regulation of signs by any multiple listing service. The rationale for this proscription appears in a National Association rule interpretation stating that “[a] board rule prohibiting the posting *** [by] members of Tor sale’ or other similar signs on property, for which the member is [sales] agent, is an inequitable limitation on its membership”, that “[a] regulation of signs has nothing to do with any conceivably rational concern or function of a Multiple Listing Service” and “[i]s a matter for the owner of the property, his authorized agent and public authority.”
Although 6 of the 7 plaintiffs were and still are members of the National Association of Realtors, defendant corporation seems to have been organized for the express purpose of circumventing the quoted rules pertaining to eligibility for membership and the regulation of sale signs. At any rate, any licensed broker is now qualified for membership in Multiple Listing and the use of signs on listed properties is purportedly curtailed by the by-law which is the genesis of this litigation.
Defendant maintains its principal office in the Town of Poughkeepsie, Dutchess County, New York. As stated in section 2 of article 1 of its by-laws, defendant’s corporate purpose is “[t]o increase cooperation among licensed real estate brokers in the County of Dutchess and to create and promote better relations between the public and real estate brokers in the County of Dutchess by formulating [sic] and maintaining a service for the exchange of listings and information.”
*69 Statistical information supplied by the parties in their submission reveals that (1) defendant’s membership roll consists of about 120 New York brokers, of whom only 7 have offices outside of Dutchess County, (2) there are approximately 532 brokers in Dutchess County, (3) the total number of “real estate transactions” in Dutchess County in the year 1978 came to about 7,258, and (4) there were about 1,383 “real estate transactions” “concluded through” defendant Multiple Listing in Dutchess County in 1978.
The protested regulation governing the display of signs on listed properties is to be found in article 13 of the corporate defendant’s by-laws. The catchline of this article is selling procedures. Section 2 of a subheading of this article which is entitled prohibitions provides, in amended form adopted on March 25, 1976, as follows: “ ‘For Sale’ signs of listing member broker only may be placed on a property, the listing of which has been submitted for distribution by the Multiple Listing Service, except with consent of listing member broker and the owner of the property. Such ‘For Sale’ signs shall be limited to the standard blue and white Multiple Listing Service signs. In the listing of large developments, large parcels of land, commercial and industrial, the broker’s own sign may be used, but must be accompanied by the standard blue and white Multiple Listing Service sign.” (Emphasis supplied.)
The prescribed penalty for violation of the foregoing section is a fine of $25, payable to defendant.
From the agreed statement of facts, it appears that, in 1978, the lead plaintiff was charged by defendant’s board of directors with a violation of this provision of the by-laws by reason of the fact that he had placed a Century 21 sign on a listed property situated in the Town of Poughkeepsie, Dutchess County. It is said that he did so with the consent of the property owner. After a hearing by the board of directors, the charge was sustained and that plaintiff was fined $25. He paid the fine “under protest”.
It is said that the other plaintiffs, acting with the consent of property owners, have placed Century or Gallery signs on other premises listed with defendant, and that, in *70 consequence of such acts, they “[a]re now in jeopardy of being charged by the Board of Directors of the Defendant with violating the aforesaid by-law.”
Plaintiffs claim that the by-law amounts to a restraint of trade and that, as such, it does violence to the due process clauses of the Federal and New York Constitutions, the Federal Sherman Act (US Code, tit 15, § 1 et seq.) and New York’s Donnelly Act.
The corporate defendant claims that the by-law represents a reasonable regulation calculated to give notice to member brokers and to prospective purchasers of the open nature of the listing, under which all member brokers are given an opportunity to sell. This, it contends, is in furtherance of the corporation’s basic purpose.
Thus, the parties seek declarations, on the one hand as to illegality and invalidity, and, on the other, as to legality and validity of the questioned by-law.
At the outset, the court notes that the litigants have neglected to allege notice to the Attorney-General of the commencement of the action as is required by subdivision 5 of section 340 of the General Business Law. This omission, however, is not fatal. The notice requirement of the statute is designed solely to apprise the Attorney-General that such an action was commenced so that he would be aware of the circumstances. It may not be considered to be a condition precedent to a cause of action. (Columbia Gas of N. Y. v New York State Elec. & Gas Corp., 28 NY2d 117, 129.)
The purpose of the Donnelly Act is to prevent restraint of trade and the creation of monopolies and to prevent parties from acting together to suppress competition to the detriment of the general public. But like its Federal counterpart, the Sherman Act, after which it was patterned (State of New York v Mobil Oil Corp., 38 NY2d 460, 463), this statute should not be applied so woodenly that every agreement may be regarded to be violative of its terms because it restrains commercial dealing to some extent.
In cases brought under the Sherman Act, the United States Supreme Court, recognizing that it was not the intention of Congress to prohibit all contracts, nor even all *71 contracts that cause an insignificant or attenuated restraint of trade, adopted the rule of reason as the standard of analysis for scrutinizing most business relations under that enactment. Under this rule, all of the circumstances presented by a particular case must be evaluated by the trier of the facts to determine whether the challenged conduct imposes an unreasonable restraint on competition. (Optivision, Inc. v Syracuse Shopping Center Assoc., 472 F Supp 665, 674-675.)
Like the Federal courts, our courts in New York will apply the rule of reason to every combination or agreement brought before them under the Donnelly Act. “Before it will condemn, there must appear the elements of injury to the public, or monopolistic control of a particular article of commerce, or unreasonable interference with and damage to the business of an individual, or the doing of illegal or unconscionable acts, or specific intent to do injury to some one else, or, in brief, at least some of the circumstances which would lead a court in good conscience to say that a given set of defendants were overstepping the bounds of reasonable ambition and fair play and were becoming a nuisance to their fellow men.” (Barns v Dairymen’s League Co-op. Assn., 220 App Div 624, 640.)
In the process of an inquiry under the rule of reason, (1) consideration must be given to the facts peculiar to the business in which the restraint is applied, the nature of the restraint and the reasons for its adoption, (2) the focal point of the analysis must be upon the impact of the challenged activity upon competitive conditions in the relevant market, and (3) any benefits to competition must be weighed against the competitive evils of the practice in question. (Optivision, Inc. v Syracuse Shopping Center Assoc., supra, p 675.)
Not exactly a paradigm of precise draftsmanship, the bylaw in question here is enigmatic and, in fact, downright bewildering in its makeup. Palpably the proviso bespeaks an intent to put a limit on the kind of signs which may be posted to publicize properties which have been placed for sale with Multiple Listing. Specifically, nothing but the prototypal Multiple Listing sign, which may include the name of the member broker who obtained the listing *72 originally, may be displayed. But the by-law contains clauses which appear to create exceptions to the rule. The first of these seems to confer an exemption upon any member broker who procures the consent of the listing broker and the property owner. The second appears to exclude “large” developments and parcels from the operation of the rule. Nowhere in the rule is the term “large”defined.
These two exceptions appear to render the rule academic and unenforceable. The first for its express exclusion, the second for vagueness. What the court treats as a supplemental submission to ward off a finding of mootness, in the form of a letter from defendant’s counsel dated December 12, 1980, states that “[a]ll parties have at all times interpreted this by-law to prohibit the use of any sign except the standard blue and white sign. . If this were not the case, there would have been no basis for the lawsuit * * * since the Plaintiffs could have complied with the by-law, merely by obtaining the consent of the property owner.” Since a copy of this letter brought no response from plaintiff’s counsel, this supplemental submission is regarded as a joint one.
Insofar as enforcement is concerned, the provision has yet another infirmity. Although a penalty in the form of a fine is dictated, the by-laws as a whole are silent as to guidelines and procedure for charge, hearing and determination. Nor is any corporate board or body expressly empowered to consider and deal with any claim of infraction. Hence, the by-law may be vulnerable to attack upon procedural due process grounds. (Cf. Blake v North Shore Multiple Listing Serv., 81 Misc 2d 793.)
While the very language of the protested by-law may well illustrate, in a technical sense, the lack of a genuine controversy here, the court is loathe to dismiss for lack of justiciability. Mindful that a declaration may serve the useful purpose of putting to rest a dispute of long standing (cf. Rockland County Multiple Listing System v State of New York, 72 AD2d 742), it will, despite reluctance to intrude in the area of voluntary corporate regulations (cf. Leon v Chrysler Motors Corp., 358 F Supp 877), proceed to dispose of this cause.
*73 This requires an evaluation of the questioned by-law which is predicated upon the assumption that it is not a victim of its own inartistic composition. It was adopted in the setting of the concept of multiple listing.
“Multiple listing is a device used by the real estate broker to give wide exposure to properties listed for sale. Each co-operating broker informs all other participating brokers of the properties listed with him, thus an individual home for sale is available to purchasers at several different brokers’ offices. As observed by the court in Grillo v Board of Realtors of Plainfield Area, 91 N. J. Super. 202, 219 A. 2d 635, 644 (1966):
“ ‘There is good in the multiple listing system. It provides an effective method for selling and buying properties. The seller benefits because his property is exposed in a number of offices, hence reaches a wider market in a shorter period of time. It is also useful and convenient to the prospective buyer who is seeking a house that will suit his needs and purse. From one selling agent he can learn of many of the properties for sale in the area. In effect, the multiple listing *** system can potentially stimulate competition in the real estate field by placing listings in the hands of all brokers in the area.’ ” (Grempler v Multiple Listing Bur. of Hartford County, 258 Md 419, 423-424.)
Viewed in the perspective of the sales method which it advances, defendant’s regulation of promotional signs can hardly be said to be anticompetitive. The evident aim of the rule is to enhance sales opportunities for the collective membership, rather than to permit an individual sales agent to gain an edge through separate advertising. In this fashion, the rule provides an incentive to competition rather than a restraint upon those vying in the real estate market. And it is difficult to see how the public stands to do anything but benefit from an upholding of the protested by-law.
Accordingly, the court finds that the by-law in question violates neither the rule of reason nor section 340 of the General Business Law. Since the activity involved here was exclusively intrastate, the Sherman Act was not considered. Nor was there a need to address the constitutional questions which were posed.