332

MORRIS ATKIN et al., Appellants, v UNION PROCESSING CORPORATION, Respondent, et al., Defendants. (And Another Action.)

Fourth Department, December 17, 1982

APPEARANCES OF COUNSEL

*Harris, Beach, Wilcox, Rubin & Levey (James M. Hartman* and *Paul J. Yesawich, III,* of counsel), for appellants.

*Nixon, Hargrave, Devans & Doyle (William D. Eggers* and *Carolyn G. Nussbaum* of counsel), for respondent.

OPINION OF THE COURT

MOULE, J.

The principal question raised on this appeal is whether an agreement between two parties which provided that only one of them would operate a scrap metal shredder in the Rochester area is in violation of either the Sherman (US Code, tit 15, § 1 *et seq.*) or Donnelly (General Business Law, § 340) Acts.

The basis of this action is a written contract made between the plaintiffs, owners of a scrap metal business in Rochester, and defendant which is also in the same business. Both parties purchased and processed scrap metal and resold the processed scrap to steel mills and foundries and were at that time considering the purchase of a metal shredder to process light metal. Steel mills preferred the shredded metal because the shredding process separated ferrous and nonferrous scrap and allowed them to purchase a cleaner grade of scrap. When defendant learned that plaintiffs had placed a down payment on a shredder, it initiated negotiations to ensure that there would be only one shredding operation in the Rochester area. Both sides agreed that there was not enough raw material in the area to support two shredding operations. They eventually reached an agreement whereby plaintiffs assigned the shredder purchase contract to defendant in return for 2% of defendant's gross sales for the next seven years. After one and one-half years had elapsed, defendant ceased making payments under the contract.

Plaintiffs originally brought suit in October, 1978 for judgment allowing them to inspect defendant's books and for the amount they claimed was due under the contract. Defendant raised the affirmative defense that part of plaintiffs' consideration for the contract consisted of an oral restrictive covenant not to operate a shredder in the Rochester area which rendered the contract unenforceable. Plaintiffs' motion for partial summary judgment was granted by Special Term, which ruled that defendant would not be allowed to prove any oral agreement because

of the contract's integration clause. Defendant appealed and this court reversed, holding that "[p]arol evidence is admissible to show that the consideration for a contract is illegal" (*Atkin v Union Processing Corp.*, 77 AD2d 790, 791). Plaintiffs then moved for a separate trial on the issue of the legality of the contract. After a trial was conducted, the court found that the alleged oral agreement not to compete was part of plaintiffs' consideration for the contract and that, since the agreement was in restraint of competition, it was per se unreasonable and in violation of both the Sherman and Donnelly Acts.

Plaintiffs present two contentions on this appeal. First, that the contract between the parties represents their entire agreement and contains no illegal restraint. Second, that, even if an oral agreement not to compete existed, it was reasonable within the meaning of both the Sherman and Donnelly Acts and, therefore, the contract was enforceable.

■ Plaintiffs' first contention is without merit. Parol evidence was properly admitted at trial to establish the existence of plaintiffs' oral guarantee not to install a shredder in Rochester (*Atkin v Union Processing Corp., supra*). Both parties testified at trial that there were only enough raw materials available in Rochester to operate one shredder profitably. The parties also agreed that the purpose of the negotiations was to ensure that only one shredder would operate in the Rochester area. The only question on which the parties disagreed was whether plaintiffs had orally covenanted not to operate a shredder in competition with defendant. It was up to the trial court to determine the credibility of the witnesses who testified. The trial court is in the best position to evaluate the credibility of witnesses and its findings should be given great deference (*Perry v Perry*, 79 AD2d 851; *McCall v Town of Middlebury*, 52 AD2d 736). The record in this case supports the trial court's finding that an oral agreement not to compete was part of plaintiffs' consideration for the agreement.

■ Plaintiffs next contend that, even if an oral agreement not to compete existed, it was reasonable within the meaning of the Sherman and Donnelly Acts. Assuming

that the Sherman Act was properly asserted in this case,[1] it does not require a finding that plaintiffs' agreement not to compete was illegal as a matter of law. Courts have construed the Sherman Act "as precluding only those contracts or combinations which 'unreasonably' restrain competition" (*Northern Pacific Ry. Co. v United States,* 356 US 1, 5; see, also, *Standard Oil Co. v United States,* 221 US 1; *Chicago Bd. of Trade v United States,* 246 US 231). There are, however, certain agreements which "because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use" (*Northern Pacific Ry. Co. v United States, supra,* at p 5). These per se unreasonable practices include price fixing (*United States v Socony-Vacuum Oil Co.,* 310 US 150, 210), division of markets (*United States v Addyston Pipe & Steel Co.,* 85 F 271, affd 175 US 211), group boycotts (*Fashion Guild v Trade Comm.,* 312 US 457), and tying arrangements (*International Salt Co. v United States,* 332 US 392). Defendant argues that the contract it entered into with plaintiffs constituted a division of the market and should, therefore, be found unreasonable per se. Since the oral agreement not to compete between the parties pertained exclusively to the Rochester area,[2] defendant's assertion is correct if the relevant geographic market involved is the Rochester area. The relevant product market in this case consists of steel mills which purchase the end product produced by the shredder. Plaintiffs' unrefuted testimony at trial was that the relevant geographic market for this product extends over an area encompassing several States. Even if plaintiffs agreed not to set up another shredder in Rochester, they could still effectively compete with defen-

---

**1.** The general question of whether a Federal antitrust statute may be raised as a defense to a contract action in State court is unclear (see *General Aniline & Film Corp. v Bayer Co.,* 305 NY 479; *Remington Rand v International Business Mach. Corp.,* 167 Misc 108; but see *American Broadcasting-Paramount Theatres v American Mfrs. Mut. Ins. Co.,* 42 Misc 2d 939, affd 20 AD2d 890, affd 17 NY2d 849, cert den 385 US 931). Given the context of this case, we need not pass upon this issue.

**2.** Defendant admitted at trial that the agreement between the parties would not have prohibited plaintiffs from setting up a shredder in close proximity to Rochester.

dant in this broad geographic market by purchasing a shredder and setting it up at another location in New York State since they would end up selling their end product to the same mills as defendant. This contract is not per se unreasonable under the Sherman Act since it is not a division of the market and, thus, it is necessary to determine whether the competition is "reasonable" under the Sherman Act. New York courts apply the "rule of reason" to every combination or agreement brought before them under the Donnelly Act (*Barns v Dairymen's League Co-op. Assn.*, 220 App Div 624, 640; *State of New York v Milk Handlers & Processors Assn.*, 52 Misc 2d 658, affd 28 AD2d 971). New York's "rule of reason" and the Federal standard of "reasonableness" are similar standards which look to the same factors in deciding whether a restraint is unreasonable (*State v Mobil Oil Corp.*, 38 NY2d 460, 463). The "rule of reason" requires consideration of the facts peculiar to the business in which the restraint is applied, the nature of the restraint and the reasons for its adoption, and its impact upon competitive conditions in the relevant market (*Optivision, Inc. v Syracuse Shopping Center Assoc.*, 472 F Supp 665, 675 [NDNY]; *Duhamel v Multiple Listing Serv. of Dutchess County*, 108 Misc 2d 67, 71). As discussed previously, the agreement's impact upon competition in the market is minimal since, if they wish to do so, plaintiffs may begin operating a shredder anywhere in the relevant geographic market outside of Rochester. Defendant has made no showing that competition was effectively restricted by this agreement to the detriment of the public interest (*Barns v Dairymen's League Co-op. Assn., supra,* at p 640). Finally, the reason for such an agreement was stated by the Court of Appeals in *Oakes v Cattaraugus Water Co.* (143 NY 430, 439), where it held that it was not improper for an individual to "persuade his competitor to abandon an enterprise in which both cannot succeed". The agreement is not unreasonable and, hence, violates neither the Sherman nor Donnelly Acts.

Judgment in favor of defendant should be reversed and the contract declared valid and not in violation of either the Sherman or Donnelly Acts.

SIMONS, J. P., HANCOCK, JR., CALLAHAN and DOERR, JJ., concur.

Judgment unanimously reversed, on the law, with costs, and judgment granted, in accordance with opinion by MOULE, J.