■ In the Matter of FRANK KICK et al., Appellants, v EDWARD V. REGAN, as Comptroller of the State of New York, et al., Respondents. — Per Curiam.

The Department of Motor Vehicles (DMV), having decided that each operator's license would bear the photograph of the licensee, issued a request for proposal (RFP) for a photographic driver's license central issuance system. DMV chose the central issuance system, rather than the over-the-counter method (self-processing film), primarily for security purposes. Its first effort was aborted when the Legislature failed to provide the necessary funds. In November 1980, DMV issued a second RFP. The State reserved the right to negotiate a contract considering price and other factors. Only Macro Industries, Inc. (Macro) submitted a bid in response to and in compliance with the second RFP and was awarded the contract in November 1981. The Commissioner of Motor Vehicles advised Macro that he considered the contract to be valid, subject only to available funding. However, a new Commissioner was installed at about the same time that the funding became available and he took the position that the agreement had expired. As a result, Macro began a CPLR article 78 proceeding against the Commissioner to adjudicate the contract as valid and to compel the Commissioner to transmit the

contract to the Attorney-General, the Budget Director and the Comptroller for their respective approvals. Special Term made the determination that the contract had not expired and enjoined the Commissioner from any new solicitation of bids unless the Division of Budget or the Comptroller disapproved the contract. Shortly thereafter, the Comptroller did disapprove the contract after his review had revealed that the contract price was higher than the cost of similar systems in other States.

Thereafter, DMV issued a third RFP which allowed vendors to submit either central issuance or over-the-counter proposals. At about the same time, Macro indicated its willingness to renegotiate the price agreed on in the November 1981 contract. A supplemental agreement was signed in May 1984 at a price lower than the original and was approved by the Attorney-General and the Comptroller. DMV then withdrew its third RFP. The instant CPLR article 78 proceeding challenging the validity of the May 1984 agreement was then brought by Frank Kick and Polaroid Corporation. Special Term determined the renegotiated contract to be lawful and valid. Petitioners appeal.

Polaroid's interest in the proceeding is that of a company that provides over-the-counter license photographs by installing photographic equipment with self-processing film at each issuing office. It has supplied that type of service to a number of States and can provide that service to DMV at a price less than that offered by Macro for the central issuance system. However, Polaroid does not have the equipment to operate a central issuance system. No one contends that DMV's decision in favor of a central issuance system was for the purpose of favoring any bidder.

At the outset, it should be noted that respondents contend that petitioners have no standing to commence this proceeding. However, we find this contention to be without merit. Kick is a citizen and taxpayer of this State and, as such, has standing (*Matter of General Bldg. Contrs. v County of Oneida,* 54 Misc 2d 260, 261; *see, Elia Bldg. Co. v New York State Urban Dev. Corp.,* 54 AD2d 337, 342). Polaroid would have bid in response to the third RFP had the Commissioner not decided to withdraw it.

Petitioners contend that Special Term erred in its refusal to annul the May 1984 contract; they claim violations of State Finance Law § 139-d and General Business Law § 340. In response to the first RFP, both Macro and DEK/Electro, Inc. (DEK) submitted bids. Before the second RFP, Macro became the wholly owned subsidiary of DEK. In submitting its bid, officers of both Macro and DEK signed the noncollusive bidding certification required by State Finance Law § 139-d. Petitioners

contend that Macro disclosed its bid to DEK and that DEK. agreed not to submit a bid so that Macro would be assured of being the successful bidder. We find no violation and no misrepresentation. DMV was informed of DEK's purchase of Macro and that DEK would not bid. The statute has to do with collusion with "any other bidder or with any *competitor*" (State Finance Law § 139-d [1] [a] [1] [emphasis supplied]). Under the circumstances of this case, an agreement between a corporation and its wholly owned subsidiary cannot be construed as being with a competitor.

Petitioners contend that the purchase of all of the stock of Macro by DEK violated General Business Law § 340. This statute has to do with contracts or agreements whereby a monopoly may be established or whereby competition is restrained. The mere formation of a wholly owned subsidiary corporation does not, under ordinary circumstances, create a monopoly. The record is completely lacking in evidence to support a finding of a violation of this statute. There was no evidence that DEK and Macro owned any machinery or equipment which could not be purchased on the open market. Nor was there any evidence that either possessed any technological expertise required for the performance of the contract which could not be attained by others. The "rule of reason" must be applied (*Atkin v Union Processing Corp.*, 90 AD2d 332, *affd* 59 NY2d 919). The fact that an agreement may eliminate competition between the parties to the agreement is not enough to condemn it (*State of New York v Milk Handlers & Processors Assn.*, 52 Misc 2d 658, 666, *affd* 28 AD2d 971). Petitioners have failed to produce evidence that DEK and Macro acted unreasonably in restraint of trade.

The last major issue raised on appeal is petitioners' contention that DMV violated competitive bidding statutes by renegotiating Macro's bid after the original contract had been disapproved by the Comptroller. Petitioners contend that the only proper procedure to follow would have been to complete the process of accepting bids in response to the third RFP issued by DMV.

To determine the validity of this contention, the effect of the Comptroller's original disapproval must be established. State Finance Law § 112 requires the Comptroller's approval of the dollar impact of a contract before it is executed or becomes effective. In this instance, it was disapproved because the price was too high. By renegotiation, the price was reduced by 31% and the Comptroller was then satisfied. It is significant that the disapproval was not for a procedural error or inadequacy in the bidding, which would have required a new procedure.

Renegotiation exclusively with the lowest responsible bidder to obtain a better price for the governmental agency is proper (*Matter of Fischbach & Moore v New York City Tr. Auth.*, 79 AD2d 14, *lv denied* 53 NY2d 604). In this instance, Macro was the only responsible bidder. Consequently, Polaroid is not in the same position as the responsible but unsuccessful bidders in *Fischbach*. We conclude that the Comptroller's original disapproval was not the State's rejection of the Macro bid, and that renegotiation was proper and resulted in a benefit to the citizens of New York.

We have examined petitioners' other contentions, including the demand for discovery, and agree with Special Term in all respects.

Judgment affirmed, with costs. Mahoney, P. J., Mikoll, Yesawich, Jr., and Levine, JJ., concur.