Jones, J.
We conclude that a systematic and deliberate practice of price discrimination by respondent oil company in the sale of gasoline to its dealers as alleged by the Attorney-General in this case would not fall within the proscription of *462 our State’s Donnelly Act (General Business Law, art 22, § 340 et seq.)[1]
The allegations are that notwithstanding its establishment of a uniform tank wagon price in each terminal area, the oil company has granted substantial discriminatory rebates (so-called "dealer aid”) to some of its dealers and not to others, and then inconsistently. The complaint charges that the effect of this practice has been to prevent many dealers of this oil company from competing with other dealers of the same company as well as with dealers in other brands; to enable the oil company to restrain competition by conducting price wars in some areas while maintaining artificially high prices in other areas, to the detriment of dealers and the public; to restrain competition and to interfere with the free exercise of activities among company dealers in the New York City metropolitan area; and to injure the public by the artificial manipulation of gasoline prices through discriminatory dealer aid.
The determinative provision of the Donnelly Act is found in subdivision 1 of section 340:
"Every contract, agreement, arrangement or combination whereby
"A monopoly in the conduct of any business, trade or commerce or in the furnishing of any service in this state, is or may be established or maintained, or whereby
"Competition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state is or may be restrained or whereby
"For the purpose of establishing or maintaining any such monopoly or unlawfully interfering with the free exercise of any activity in the conduct of any business, trade or commerce *463 or in the furnishing of any service in this state any business, trade or commerce or the furnishing of any service is or may be restrained, is hereby declared to be against public policy, illegal and void.”
We agree with the conclusion reached at the Appellate Division that the alleged practices of the oil company do not fall within the prohibition of this subdivision. We are impelled to this conclusion in large part by the history which lies behind the adoption of our State’s Donnelly Act and its 80-year history in our courts and our Legislature.[2]
The Sherman Antitrust Act (now US Code, tit 15, § 1) was adopted by the Congress in 1890. Three years later, obviously inspired by the Sherman Act, New York adopted a statute strikingly similar in diction to the Federal statute (L 1893, ch 716). The State statute was amended in 1897 and again in 1899 when it acquired its present popular title, the Donnelly Act. Since 1899 the statute has been amended eight times, but for present purposes none of these amendments changed the scope or direction of the statute. Thus, the present Donnelly Act has been considered to have been modeled after the Sherman Act (e.g., Matter of Aimcee Wholesale Corp. [Tomar Prods.], 21 NY2d 621, 626; Meenan Oil Co. v Long Is. Light. Co., 39 AD2d 233, 236; Matter of Kates v Lefkowitz, 28 Misc 2d 210, 213).
Price discrimination per se is not and never has been within the purview of the Sherman Act. By the adoption of the Clayton Act in 1914 the Congress sought by supplementing the Sherman Act to prohibit price discrimination in specified circumstances.[3] In 1936 the Clayton Act was amended in turn by the Robinson-Patman Act (49 US Stat 1526, now US Code, tit 15, § 13), inter alia, to provide comprehensive Federal regulation of price discrimination. It is clear to us that reference to the history of and practice under the Federal antitrust laws demonstrates that if our Donnelly Act is to be considered a counterpart of the Sherman Act it does not extend to price discrimination as such.
The Attorney-General, however, would attach critical signif *464 icance to the fact that to the Sherman Act list of proscriptions, "contract, combination * * * or conspiracy” our Donnelly Act adds the term "arrangement”, and he cites recognition by the courts of our State that the scope of Donnelly is broader than that of Sherman (e.g., People v American Ice Co., 120 NYS 443, affd 140 App Div 912; Eagle Spring Water Co. v Webb & Knapp, 236 NYS2d 266, 275-276). Although undoubtedly the sweep of Donnelly may be broader than that of Sherman, we conclude that under the familiar canon of statutory construction, noscitur a sociis, the term, "arrangement”, takes on a connotation similar to that of the other terms with which it is found in company, and thus must be interpreted as contemplating a reciprocal relationship of commitment between two or more legal or economic entities similar to but not embraced within the more exacting terms, "contract”, "combination” or "conspiracy”. To be sure the practice charged in the complaint here may be described as "bilateral” to the extent that it pertains both to the oil company and to its dealers. On the other hand there is no allegation of any agreement or commitment on the part either of the oil company or of its dealers or any of them. To interpret the word "arrangement” as embracing any "practice”, as the Attorney-General urges us to do, would be unwarranted as a matter of lexicology and, more significant, unjustified in the historical context of the statute. The addition of a conclusory allegation as to the effect of a described practice (here effecting restraint of trade) cannot operate, of course, to bring a one-sided practice which is outside the scope of the statute within its proscription.
Aside from the compelling considerations of statutory construction, we note that differential prices have long been a familiar characteristic of our free enterprise system, never thought to be either immoral or unlawful. There are many valid reasons for differentials based on accepted economic theory, turning for instance on cost justification, quantity purchases, financial stability of the buyer, local competitive context, intracompany or familial customer relationship, or other special circumstance. This is recognized by the affirmative defenses explicitly assured under the Robinson-Patman Act (US Code, tit 15, § 13; cf. Standard Oil Co. v Federal Trade Comm., 340 US 231, especially at pp 248-250). The single-price concept is of modern origin, perhaps appearing first in supermarket retail outlets. The circumstance, referred to below, *465 that selective pricing has not before been the target of complaints under section 340, in one aspect cannot be thought to be noteworthy. Until recent years it would have occurred to no one to challenge the propriety of differentiated pricing, absent any horizontal arrangement with other suppliers.
Were selective pricing having the effect of restraining trade, without more, as alleged here, to be held to be within the prohibition of our Donnelly Act, as the Attorney-General urges, intrastate suppliers in New York might be placed in an economically impossible situation. They would be precluded from meeting competition. Insofar as their transactions were in interstate commerce they would be protected to the extent of the availability of the affirmative defenses of RobinsonPatman; in intrastate commerce, without Robinson-Patman, they would have no such protection.
We note that in our State when the Legislature has sought to prohibit price discrimination it has chosen to do so on an industry-by-industry basis (e.g., Public Service Law, § 65, subd 2; Insurance Law, § 183, subd 1, par [c]; Alcoholic Beverage Control Law, § 101-b, subd 2; Agriculture and Markets Law, § 258-t) rather than by comprehensive proscription. For what slight additional persuasion it carries we also note that while 30 States have enacted State price discrimination counterparts of Robinson-Patman, 20 States have preferred, as does New York, to approach price discrimination on an industry-by-industry basis (1 CCH Trade Regulation Reporter, par 3510, at p 5401; par 3514, at p 5403).
In reaching the conclusion we do, we observe that never in the 80-year history of the statute has it been held that a practice of price discrimination such as that alleged here, even if it be further asserted that it had the effect of restraining trade, constitutes a violation of subdivision 1 of section 340. Our courts have consistently upheld vertical price fixing (Maroney, 19 Syracuse L Rev 819, 841; but cf. L 1975, ch 65). It would defy reality to suggest that never before has a practice of price discrimination comparable to that alleged here come to the attention of the office of the Attorney-General or of the Legislature. In this circumstance the absence of any attempt at prosecution by the Attorney-General or any competitor constitutes at least an implied interpretation that subdivision 1 of section 340 is not to be read as extending to such practices; and the attendant failure of the Legislature to amend the statute may be read as acquiescence in the fact of *466 noncoverage. (Cf. Engle v Talarico, 33 NY2d 237, 242.) To the extent that the legislative enactment proscribes conduct, and in this instance conduct which is malum prohibitum rather than malum in se, the statute must clearly describe the prohibited conduct. (Cf. Lanzetta v New Jersey, 306 US 451, 453; Connally v General Constr. Co., 269 US 385, 391). "There can be no doubt that a deprivation of the right of fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language.” (Bouie v City of Columbia, 378 US 347, 352.)
We conclude that the practice alleged in the first and second causes of action is not within the ambit of subdivision 1 of section 340 as it is presently drafted. Whatever may be the appeal or weight of arguments that the public should be protected against the practices alleged in this complaint, relief if any must come by action of the legislative branch.[4]
Accordingly, the order at the Appellate Division should be affirmed.

. The complaint in this action initially alleged six causes of action, in three sets of pairs—(1) price discrimination in the first and second causes of action; (2) vertical price fixing in the third and fourth causes of action; and (3) tie-in sales in the fifth and sixth causes of action. Injunctive relief was sought in the odd-numbered causes and the imposition of penalties in the even-numbered causes. The oil company moved under CPLR 3211 (subd [a], par 7) to dismiss all six causes of action for failure to state a cause of action. Supreme Court granted the motion as to the third and fourth causes (vertical price fixing) and denied it as to the other four causes. The parties then cross-appealed to the Appellate Division. Thereafter before argument the parties stipulated to withdraw all appeals before the Appellate Division except the oil company’s appeal from the denial of its motion to dismiss the first and second causes of action. Thus, there was considered at the Appellate Division and is now before us on this further appeal only the pair of causes of action alleging price discrimination.

. For a detailed discussion of the legislative history of the Donnelly Act see NYS Bar Association, Section on Antitrust Law, Report of the Special Committee to Study the New York Antitrust Laws (1957) (pp la-20a); Maroney, Antitrust in "The Empire State”: Regulation of Restrictive Business Practices in New York State, 19 Syracuse L Rev 819, 821-824 (hereafter "Maroney”).

. Senate Rep No. 698, 63d Cong, 2d Sess 1 (1914).

. We find nothing, in Columbia Gas of N.Y. v New York State Elec. & Gas Corp. (28 NY2d 117), which calls for a contrary disposition. Because of the factor of utility rate regulation that case concededly did not involve price discrimination as such. The price discrimination there confronted was that in a particular factual setting, involving an abuse of monopoly power by a public utility within the proscription of section 65 of the Public Service Law. We do not denigrate the decision in Columbia Gas. We merely acknowledge that its holding does not dictate the conclusion that subdivision 1 of section 340 of the General Business Law must be stretched to embrace the nonreciprocal, unilateral practice alleged in the present case.