OPINION OF THE COURT
Marie G. Santagata, J.
This is a motion by the defendants for an order dismissing this indictment pursuant to CPL 210.20.
*543 The defendants are charged with a combination in restraint of the furnishing of services, in violation of the Donnelly Act, sections 340 and 341 of the General Business Law. There are eight individual physician defendants and one association defendant, Surgical Specialties Association of New York, Inc. (hereinafter SSANY).
The indictment charges the defendants, inter alia, with "concertedly resigning their authorizations to treat non-emergency Workmen’s Compensation patients, and concertedly refusing to treat non-emergency No-Fault patients.”
Amicus curiae briefs in support of the motion have been submitted by the Medical Society of the State of New York, the Association of American Physicians and Surgeons, Inc., and the Private Medical Care Foundation, Inc.
FACTS
The facts are substantially undisputed.
Section 13-b of the Workers’ Compensation Law requires that only physicians authorized by the compensation board treat workers who are injured during the course of their employment. Fees are governed by a minimum fee schedule adopted by the board. The No-Fault Insurance Law (Insurance Law, § 678) enacted by the Legislature in 1977 adopted the minimum fee schedule of the compensation board as the maximum fee schedule to be paid to physicians for the treatment of persons injured in automobile accidents.
In 1975 many physicians who were dissatisfied with the compensation board communicated their complaints to the chairman of the board and members of the Legislature. Individual physicians resigned from the compensation panels. Their complaints included the failure of the board to answer correspondence or authorize necessary treatment; the unreasonable delays or failure to approve payment of fees; the requirement of duplicitous paper work and coercion in forcing them to accept inadequate fees.
The defendant physicians and others organized SSANY in 1977 with the objective of urging the modification of the compensation fee schedule and the elimination of administrative abuses from the system. As the efforts to obtain legislative action failed, the physicians concertedly agreed to resign their authorizations to treat work-related or automobile accident injuries. Over 250 physicians in the Long Island area *544 became unavailable to render nonemergency medical aid to workers and accident victims. This situation prevails to this date.
The Attorney-General of the State of New York, upon learning of the numerous complaints from residents who were refused medical services, commenced an investigation. This indictment is the result of that investigation.
ISSUE
The defendants have advanced several arguments in support of this motion to dismiss the indictment.
This court will consider the only one which is necessary to its decision. It is an issue of first impression, to wit: Is the medical profession exempt from the provisions of the Donnelly Act?
CONTENTIONS
The defendants contend that as members of a learned profession they are exempt from the provisions of the Donnelly Act. They rely on the New York Court of Appeals decision of Matter of Freeman (34 NY2d 1).
The Attorney-General responds that the references to the Donnelly Act in Freeman (supra) are dicta; that the Donnelly Act is the "Little Sherman Antitrust Act” (State of New York v Mobil Oil Corp., 38 NY2d 460); and, therefore, this court should be guided by the holding enunciated by the United States Supreme Court in Goldfarb v Virginia State Bar (421 US 773).
SHERMAN ACT
The Sherman Act (the Federal antitrust law) does not contain a specific exemption in favor of any profession. An analysis of the judicial application of the act reveals that the courts have not created an exemption in favor of any profession. Instead, Federal courts have evaluated each case on its merits, using as a test a rule of reason to determine whether the activity was anticompetitive and an unreasonable restriction on interstate commerce, thereby constituting a violation of the Sherman Act. (National Soc. of Professional Engrs. v United States, 435 US 679, 691; Handler, Antitrust-1978, 78 Col L Rev 1363, 1363-1374.)
In Goldfarb v Virginia State Bar (421 US 773, 788, supra) *545 the Supreme Court stated there is a heavy presumption against implicit exemptions. (United States v Philadelphia Nat. Bank, 374 US 321, 350-351.) It gave neither blanket inclusion nor blanket exclusion to the professions, holding that the conduct of mandatory price-fixing was anticompetitive and an unreasonable restraint in interstate commerce, and therefore violative of the act. The court based its decision on the activity and not upon whether it was business, trade or profession. Because of the activity alleged herein, a concerted refusal to deal in the nature of a boycott, there is no doubt that if the Sherman Act were controlling in this case, it would mandate the denial of this motion. (American Med. Assn. v United States, 317 US 519; United States v Oregon State Bar, 385 F Supp 507.)
DONNELLY ACT
The Donnelly Act, New York’s antitrust law which was enacted in 1899, is a codification of prior common law and statutory law. (Matter of Davies, 168 NY 89.) Presently it declares void and illegal against public policy "[e]very contract, agreement, arrangement or combination, whereby * * * [competition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state is or may be restrained”. (General Business Law, § 340, subd 1.)
The act does not contain a specific exemption in favor of any profession. The only judicial application of the act to the professions is Matter of Freeman (34 NY2d 1, supra) which involved the question of whether a Surrogate, in fixing a fee, was unduly influenced by a minimum fee schedule of the local bar association. One of the parties asserted that a minimum fee schedule was regulated by the Donnelly Act. The Court of Appeals ruled on that issue without considering whether the conduct was proscribed under the act but rather relying upon the distinction between the profession and a business or trade. It stated unequivocally a profession is not a business and therefore exempt from the provisions of the Donnelly Act.
In rendering its decision, it was aware of the lower court holding in Goldfarb (355 F Supp 491). It specifically distinguished the Federal decision, stating that the question presented dealt solely with the relationship of the State antitrust law to the statutory scheme for regulating the practice of law.
The court concluded that neither by statutory language, *546 legislative history nor legislative intent did the Donnelly Act apply to the legal profession. It held that the legal profession was exempt from the act.
The considered reasoning of a court of final resort on a proposition raised by counsel and deliberately passed on by the court is not mere dicta but must be taken by the courts of inferior jurisdiction as binding. The holding of the majority in Freeman (supra) is not dicta. (Matter of Freeman, 34 NY2d, at p 12, concurring opn Wachtler, J.)
The issue before this court is not distinguishable. There is no valid distinction in the interpretation of the Donnelly Act between the legal and medical professions. All the indicia of professionalism noted by the Court of Appeals clearly apply equally to medicine as to law (Education Law, arts 130, 131; Matter of Freeman, supra, p 7).
Historically, the Legislature did not intend that the medical profession be subject to the act. (Report of the Special Committee to Study the New York Antitrust Laws of the New York State Bar Association, Section on Antitrust Law, 1957.) The statutory language limited the act to any business or trade and the 1933 amendment that extended the act to include service was not intended to include service rendered by the professions. (Bennett, Recent Amendments to the Donnelly Act, 5 NY State Bar Assn Bull, 384, 389; Matter of Freeman, supra.)
Consequently, by virtue of the statutory language, legislative history and intent and the judicial interpretation of the act, it is concluded that the medical profession is exempt from the Donnelly Act.
This court has reviewed the rulings in Matter of Green (NYLJ, Feb. 23, 1978, p 14, col 2) and Matter of Hirschorn v Attorney-General of State of N. Y. (93 Misc 2d 275). Neither ruling involved a criminal prosecution, but rather motions by potential witnesses to quash subpoenas issued by the Attorney-General in connection with investigations under section 340 of the General Business Law. These cases held quite properly that an investigation by the Attorney-General into possible antitrust activity was a proper inquiry. It did not consider whether the physicians were subject to the provisions of the Donnelly Act and any such reference was pure dicta and not competent to overrule Matter of Freeman (supra).
CONCLUSION
In this court’s view, the conduct of the physicians, the *547 concerted refusal to deal, is in the nature of a boycott, and reprehensible notwithstanding what may be valid complaints. (State of New York v Horsemen’s Benevolent & Protective Assn., 55 AD2d 251.)
The concerted refusal to treat the injured and the maimed prevents those innocent victims from receiving medical care from the only ones qualified by training and education to render such care. There are no "do it yourself kits” for those requiring orthopedic, plastic or neurological treatment. The social harm inflicted is immeasurable and outweighs any individual inequities. The public is made to suffer in what is essentially an economic battle — a fight over money, which is inconsistent with the physician’s oath to humanity.
It is also important to note that an administrative agency or board cannot be permitted to function without an adequate review of grievances lodged against it.
This court is without remedy. The Legislature is not so limited. The problem presented is far too serious to be ignored and should be addressed without delay.
Accordingly, the omnibus motion is granted to the extent that the indictment is dismissed on the grounds that the medical profession is exempt from the Donnelly Act. In all other respects it is denied as moot.