Jones, J.
(concurring). I agree that there should be an affirmance but not on the ground that the allaged conduct of defendant physicians does not fall within the proscription of the Donnelly Act (General Business Law, § 340). In my view, while at least certain activities of members of the medical and other professions should now be held to come within the embrace of our State statute, constitutional principles preclude the prosecution of the physicians charged in this instance.
I am impelled to dissent from the conclusion that the *449 Donnelly Act is inapplicable because I think the majority ignores the basal legislative intent disclosed in the history of the 1957 revision of that statute as identified and underscored in our decision in State of New York v Mobil Oil Corp. (38 NY2d 460), as well as the now controlling significance of the decision of the United States Supreme Court in Goldfarb v Virginia State Bar (421 US 773). I recognize that in Matter of Freeman (34 NY2d 1) our court, after a careful examination of the language and legislative history of our State statute, concluded in 1974 that the legal profession was exempt from any application of the Donnelly Act. I also perceive no significant legal difference between the medical profession and the legal profession for present purposes. But acknowledgment of these two propositions does not dictate the disposition of the appeal now before us. At the time of our decision in Freeman there had been no final, authoritative decision as to whether the Federal antitrust laws applied to the professions. After the Supreme Court’s decision in Goldfarb in 1975, however, it is clear that the professions are not wholly exempt from the Federal antitrust laws.
What is now known as the Donnelly Act was initially adopted in 1893. Our present focus, however, must be on the major revision of the statute enacted in 1958; the statute today is virtually the product of the 1957 redrafting based in large part on a report of the Special Committee to Study the New York Antitrust Laws of the New York State Bar Association. A reading of its report can leave no doubt that it was the intention of that committee that our Donnelly Act should be considered the mirror counterpart of the Federal Sherman Act and that interpretations of the former were to be guided largely by interpretations and applications of the latter. Portions of the committee’s report[1] are illustrative. For instance, at p 10: “The changes which we advocate are designed merely to simplify and not to alter in any respect the coverage and meaning of the statute save to make clear that it relates to all subjects of commerce, or in other words, that it embraces the same economic activi *450 ties as the Sherman Act.” (Emphasis in original.) Not only is it evident that the drafters intended the State courts to consider Federal antitrust principles as they existed in 1957, it is equally clear that they intended and expected that the Donnelly Act would be interpreted compatibly with future interpretations of the Sherman Act. Indeed, the special committee stated that expectation as one of the reasons it considered it unnecessary to substitute the wording of the Sherman Act for the diction of the Donnelly Act.[2]
Subsequent to our decision in Freeman, we explicitly recognized this principle of counterpart conformity (State of New York v Mobil Oil Corp., 38 NY2d 460, 463, supra; see, also, Matter of Aimcee Wholesale Corp. [Tomar Prods.], 21 NY2d 621, 626). It was the dissent in Mobil Oil which unsuccessfully contended for an independent construction of our State statute. While it would unquestionably lie within the competence of our State Legislature to adopt antitrust proscriptions at variance, large or small, with the provisions of the Federal statutes, there is no ground to conclude that such was in fact the intention of the Legislature nor has any rational elucidation been advanced in this instance for any such disparity. Indeed, with the continual constriction of the areas of commercial activity held to be of intrastate dimension only and the increasing Federal-State nexus in both the provision and the financing *451 of medical care services, no sound reason is perceived for the application of differing antitrust standards under State and Federal statutes; sound reason would dictate parallel application of the two similar statutes.
Respect for the basic requirement of parallel statutory construction did not dictate any particular result when Freeman was before us. At the time of that appeal there had been no definitive decision with respect to the application of the Sherman Act to the professions.[3] Now there has been.[4] This is not, as the majority would characterize it, an instance in which “the ruling of a Federal court interpreting a Federal statute has no direct bearing upon a State court’s analysis of an analogous provision enacted by the State Legislature” (majority opn, at p 447). Acceptance of any rubric that the dogma of stare decisis mandates slavish adherence to a State court application of the Donnelly Act which by happenstance antedates but later proves to have been at variance with a subsequent definitive construction of the Federal antitrust statute by the Supreme Court would, pro tanto, vitiate the fundamental counterpart conformity principle which was at the heart of the 1957 revision of the Donnelly Act.
Matter of Freeman (34 NY2d 1, supra) should, therefore, be expressly overruled and total exemption from the *452 proscriptions of the Donnelly Act be denied the members of the medical profession. It would suffice for present purposes to hold that the conduct here alleged (organization of a group boycott and concerted refusal to furnish professional services to nonemergency workers’ compensation and no-fault insurance patients as a means to protest low fee schedules established by law for such services — a blatant effort to advance the economic self-interest of members of the medical profession) falls within the scope of the Donnelly Act prohibitions. Recognizing, as did the Goldfarb court, that professional activities may be considered for antitrust purposes under a slightly different standard from that applicable to businesses (421 US, at p 792), we would not find it necessary to reach or consider whether there might not be certain combinations that, while restraining the free rendering of medical services, would nonetheless be exempt from both Federal and State antitrust law proscription because they were grounded in legitimate professional rather than economic objectives (for instance, enforcement of a requirement that for certification of physicians as specialists they continue their training under Continuing Medical Education [“CME”] programs — to use the illustration tendered by the Attorney-General).[5]
Notwithstanding that I would overrule Freeman and reject the holding in that case as requiring a dismissal of this indictment, I would nonetheless affirm the order of the Appellate Division and uphold the dismissal of the indictment as against these defendants on constitutional grounds. Inasmuch as our decision in Freeman was a very clear statement of the inapplicability of this State’s antitrust laws to the professions, as a matter of fundamental justice it cannot be said that the individual defendants in this case acted at their peril in relying on a prior holding of this court. To hold the Donnelly Act applicable to the activities alleged in this indictment would run afoul of the fair warning requirement set down by the United States Supreme *453 Court in Bouie v City of Columbia (378 US 347) (cf. Marks v United States, 430 US 188).[6]
Chief Judge Cooke and Judges Jasen, Gabrielli and Wachtler concur in Per Curiam opinion; Judge Jones concurs in a separate opinion in which Judge Fuchsberg concurs; Judge Meyer taking no part.
Order affirmed.

. (NYS Bar Assn., Section on Antitrust Law, Report of the Special Committee to Study the New York Antitrust Laws [1957].)

. Upon consideration of the substantive adequacy of the Donnelly Act, the special committee wrote:
“The Committee finds New York law substantively adequate for the task at hand. However, in contrasting state and federal law one is struck by the verbosity, turgidity and complexity of the New York legislative language. Were we to start from scratch, in order to avoid placing businessmen in the dilemma of having to comply with conflicting standards, we might urge the use of identical wording in both state and federal statutes.
* ** V
“But the Donnelly Act has been on the books for close to sixty years and the substitution of Sherman law wording would produce more confusion than it would allay. Moreover, the state decisions seem to rest on the same fundamental concepts as does the federal law, and the differences between state and federal jurisprudence are insubstantial. In the few instances where the state law seems to diverge from federal, the state decisions are often generations old. Should the same issues arise again, they would presumably be decided in the light of modern antitrust concepts which have been developed federally.
“For these reasons we find no need for legislative alteration of any of the doctrines developed by the New York courts.” (Report, at p 8.)

. In earlier cases there had been opinions which intimated that members of the medical profession might be within the ambit of the Federal antitrust laws (United States v Oregon Med. Soc., 343 US 326; American Med. Assn. v United States, 317 US 519). It is worth noting that the report of the special committee in 1957 cites both of these cases in comparing the text of the Donnelly Act, which prior to the 1957 revision was couched in terms of described activities with that of the Federal antitrust statute, observing that “[t] he Sherman Act, on the other hand, is not limited in application to specific articles or services. Advertising, investment banking, insurance, medicine, are all within its reach” (Report, at p 23a; emphasis added).

. Goldfarb and its progeny have firmly established that “The nature of an occupation, standing alone, does not provide sanctuary from the Sherman Act” (421 US, at p 787). Since Goldfarb, the Federal courts have consistently reaffirmed that the professions fall within the ambit of the Sherman Act. (See, e.g., National Soc. of Professional Engrs. v United States, 435 US 679; Virginia Academy of Clinical Psychologists v Blue Shield of Va., 1980-2 CCH Trade Cases, par 63,395 [4th Cir]; Arizona v Maricopa County Med. Soc., 1980-1 CCH Trade Cases, par 63,239 [9th Cir], cert granted 49 USLW 3663; Boddicker v Arizona State Dental Assn., 549 F2d 626; Ballard v Blue Shield, 543 F2d 1075.)

. Indeed in Freeman we acknowledged that price-fixing arrangements the primary purpose of which would be to produce a certain minimum financial reward to individual members of the legal profession might fall into a different category (34 NY2d, at p 11).

. Additionally, it might have been that, at later stages of the criminal action, if the indictment were now to be sustained, a defense would have been available under section 15.20 of the Penal Law. Subdivision 2 provides: “A person is not relieved of criminal liability for conduct because he engaged in such conduct under a mistaken belief that it does not, as a matter of law, constitute an offense, unless such mistaken belief is founded upon an official statement of the law contained in * * * a judicial decision of a state * * * court”.