**NORTH COUNTY COMMUNICATIONS CORPORATION, Plaintiff,**

v.

**VERIZON NEW YORK, INC.; Verizon Services Corporation; and Does 1 through 100, Defendants.**

No. 02–CV–1065.

United States District Court, N.D. New York.

Nov. 14, 2002.

**382**

[black redaction bar]

————

Cohen, Dax & Koenig, P.C., Attorneys for Plaintiff, Albany, NY, Joshua N. Koenig, Susan L. Taylor, Of Counsel.

Kellogg, Huber, Hansen, Todd & Evans, P.L.L.C., Attorneys for Defendants Verizon New York, Inc. and Verizon Services Corporation, Washington, D.C., Marc C. Hansen, Steven F. Benz, Eli C. Schulman, Of Counsel.

Tobin & Dempf, LLP, Attorneys for Defendants, Albany, NY, William H. Reynolds, Of Counsel.

Verizon, Arlington, VA, John Thorne, Robert J. Zastrow, Of Counsel.

### MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. INTRODUCTION

Plaintiff, North County Communications Corporation ("North County"), brought suit in New York State court against Verizon New York, Inc. ("VNY" or "Verizon"), Verizon Services Corporation ("Verizon"), and Does 1 through 100. After Verizon filed a notice to remove the action to federal district court, North County moved to remand it back to state court. The parties have fully briefed the issues. Oral argument was held on October 11, 2002, in Utica, New York. Decision was reserved.

## II. FACTUAL BACKGROUND

Taken from plaintiff's complaint, the following are the alleged facts.

The Telecommunications Act of 1996 expanded competitive possibilities in local exchange markets by essentially allowing smaller telephone companies to more easily "interconnect" their networks with those of larger, more established companies. These smaller companies are known, under the Telecommunications Act and elsewhere, as competitive local exchange carriers ("CLECs"), and the larger companies are known as incumbent local exchange carriers ("ILECs").

On March 14, 2001, North County, as a CLEC, notified Verizon of its intent to interconnect with Verizon networks in New York State. VNY is an ILEC. North County claims that in the six months following, Verizon "deliberately dragged [its] feet and put up obstacles and roadblocks to keep [North County] out of the local telecommunications market in New York, all for the purpose of maintaining [VNY's] grip on the local telephone market, depriving consumers of maximum choice with their telecommunications dollar and damaging [North County] in the process." (Complaint, ¶ 6). North County claims that the Verizon account manager assigned to service North County's needs, Dianne McKernan, "stonewall[ed] the interconnection process by making unreasonable, onerous and unnecessary demands upon [North County]." (Complaint, ¶ 17).

Among the demands made on North County was the alleged interconnection prerequisite that a "dedicated" facility be built. VNY, as an ILEC, controls facilities throughout the New York telecommunications market. The funding necessary to build these facilities was provided, at least in part, by VNY's ratepayers and those of its predecessors, New York Telephone and Bell Atlantic. Unable to procure the necessary funding for construction of new facilities, North County requested interconnection at two separate Verizon facilities in New York. Plaintiff claims that Verizon refused the request, despite the technical capabilities to grant it, and despite the fact that Verizon had allowed other affiliates or parties to share the facilities. Plaintiff

claims that Verizon instead demanded that North County build a new "dedicated facility" before interconnection could occur, and refused to hold meetings with North County until the construction of such facility was complete.

North County also lists other conduct to support its belief that Verizon was behaving in a manner consistent with maintaining monopolistic power over the New York City telecommunications market. Specifically, North County claims Verizon:

(1) repeatedly lost orders and signature pages;

(2) ignored [North County's] request to opt into an existing interconnections [sic] agreement between [VNY] and another CLEC, as was North County's right;

(3) insisted on installing equipment on unnecessary additional racks at the location where [North County] was subleasing space, despite the absence of any technical reason to impose such a requirement, and needlessly raising the cost of doing business for [North County];

(4) refused to allow [North County] to order interconnection trunks, thus preventing [North County] from being able to order prefixes;

(5) refused to build trunks in as timely a fashion as with other service offerings, and as if [North County] were a retail customer;

(6) demanded that [North County] provide the defendants with information which [North County] was unable to provide because the information resided in the defendants' sole possession, and then delayed the interconnection process further when [North County] was unable to provide the information demanded;

(7) demanded that information which [North County] had already submit-ted to be resubmitted in a different format;

(8) failed to treat [North County] as well as if [it] were a [VNY] retail customer or an affiliate of the defendants; and

(9) refused to use a shared mux for wholesale services, despite the technical feasibility of doing so.

(Complaint, ¶ 31).

North County filed a complaint on July 19, 2002, in the Supreme Court of the state of New York, County of Albany, alleging two causes of action. In its *first* cause of action, North County alleged that Verizon engaged in anti-competitive and monopolistic activities in violation of the Donnelly Act, N.Y. Gen. Bus. L. § 340. In its *second* cause of action, North County alleged that Verizon had a duty, under Article 5, Section 91 of the New York Public Service Law, to provide and furnish instrumentalities and facilities that were adequate, just and reasonable, and to refrain from making unreasonable ·or unjust charges for services rendered. North County further alleges that, under the same law, Verizon is liable for making charges or demands for compensation from North County that is greater than those made upon other corporations under similar circumstances, and that Verizon subjected North County unreasonable prejudice or disadvantage. As a direct and proximate cause of both alleged statutory violations, North County argues that its "right to provide telecommunications services to New York City residents has been hindered, delayed, and/or eliminated ..." and that "New York City customers were denied access to a truly open and competitive marketplace" because defendants' tactics "limit[ed] their available options for local· exchange services, forcing them to pay more for fewer services, and impairing competition in a significant way." (Complaint, ¶¶ 37–38, 46–47).

On August 16, 2002, Verizon filed a notice of removal to federal district court, alleging diversity jurisdiction as the ground for removal pursuant to 28 U.S.C. § 1332. In this notice, Verizon alleged no alternative ground for removal. Upon receipt of this notice of removal, counsel for plaintiff correctly notified defendants that 28 U.S.C. § 1441(b) prohibits removal based on diversity jurisdiction where the federal court to where the action is removed sits in the same state as that of a defendant's residence. Because VNY is incorporated in and has its principal place of business in New York State, removal based on diversity jurisdiction was improper.

As a result, on August 23, 2002, defendants filed an amended notice of removal, alleging, for the first time, that any dispute between the parties based on the facts in the complaint is governed not by state law, but by federal law, specifically, the Telecommunications Act of 1996. Defendants thus urged subject matter jurisdiction, pursuant to 28 U.S.C. § 1331, as a ground for removal to federal district court.

### III. *DISCUSSION*

#### A. *North County's Complaint is Well–Pleaded*

It has been "long held that '[t]he presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint'." *Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998) (quoting *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)); *see also Gully v. First National Bank,* 299 U.S. 109, 112–13, 57 S.Ct. 96, 81 L.Ed. 70

(1936); *D'Alessio v. New York Stock Exchange, Inc.,* 258 F.3d 93, 100 (2d Cir. 2001). Thus, in order for federal question jurisdiction to arise, the plaintiff's complaint must establish "either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 808, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (quoting *Franchise Tax Bd. of California v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). Even though the Supreme Court, in *Franchise Tax,* indicated that a case may "arise under" federal law "where the vindication of a right under state law necessarily turn[s] on some construction of federal law," 463 U.S. at 9, 103 S.Ct. 2841, it later warned that this rather loose pronouncement "must be read with caution." *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 809, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).

Indeed, defenses raised by defendants are not part of the plaintiff's properly pleaded complaint and are not, as such, considered when analyzing a case under the well-pleaded complaint rule. *See, e.g., Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Therefore, affirmative defenses invoking federal law do not serve as a proper basis for removal to federal court, "even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax,* 463 U.S. at 14, 103 S.Ct. 2841. Nor can the remainder of a defendant's answer, or even the petition for removal, form a proper basis for removal. *Westmoreland Hospital Ass'n v. Blue Cross of Western Pa.,* 605 F.2d 119, 122 (3d Cir.1979) (quoting *Gully,* 299 U.S. at 113, 57 S.Ct. 96); *D'Alessio,* 258 F.3d at 100.

Instead, the plaintiff's complaint, and any attachments thereto, are the only documents considered under the well-pleaded complaint rule, and only after examination of the allegations in said complaint can a court determine whether a federal question has been raised. *D'Alessio*, 258 F.3d at 100 (internal citations omitted). The raising of the federal issue must not be tangential; it is imperative that "federal law is a necessary element of one of the well-pleaded . . . claims." *Franchise Tax*, 463 U.S. at 13, 103 S.Ct. 2841. The federal controversy disclosed on the face of the complaint must be "genuine and present," *Gully*, 299 U.S. at 112, 57 S.Ct. 96, and the federal law controlling the controversy "must be in the forefront of the case and not collateral, peripheral, or remote." *Merrell Dow*, 478 U.S. at 813 n. 11, 106 S.Ct. 3229. As a result of these restrictions placed on what documents and materials to which a district court may resort in aiding its determination of whether a case is subject to removal, the well-pleaded complaint rule reaffirms the notion that "the plaintiff is master of the complaint, free to avoid federal jurisdiction by pleading only state law claims even where a federal claim is available." *Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir.1998); *see also Williams*, 482 U.S. at 392, 107 S.Ct. 2425 (stating that plaintiff "may avoid federal jurisdiction by exclusive reliance on state law"); *Fax Telecommunicaciones Inc. v. AT & T*, 138 F.3d 479, 486 (2d Cir.1998) ("a plaintiff may avoid federal jurisdiction by pleading only state law claims, even where federal claims are also available, and even if there is a federal defense").

In the instant case, North County's complaint properly alleges state law claims. The *first* cause of action alleges that Verizon engaged in monopolistic activities in

violation of the Donnelly Act. The Donnelly Act is generally interpreted in a fashion identical to its federal counterpart, the Sherman Act. *See Geneva Pharmaceuticals Technology Corp. v. Barr Laboratories, Inc.*, 201 F.Supp.2d 236, 279 (S.D.N.Y.2002) (citations omitted); *State of New York v. Mobil Oil Corp.*, 38 N.Y.2d 460, 381 N.Y.S.2d 426, 428, 344 N.E.2d 357 (1976). To sustain its claim under the Donnelly Act, North County "must identify the relevant product market, describe the nature and effects of the purported conspiracy and allege how the economic impact of that conspiracy is to restrain trade in the market in question, and show a conspiracy or reciprocal relationship between two or more entities." *Altman v. Bayer Corp.*, 125 F.Supp.2d 666, 672 (S.D.N.Y.2000); *Creative Trading Co., Inc. v. Larkin–Pluznick–Larkin*, 136 A.D.2d 461, 523 N.Y.S.2d 102, 103 (N.Y.App.Div. 1988).

Though Verizon contends that North County has no claim under New York state law, the allegations contained in plaintiff's complaint are all relevant to the above-mentioned requirements of proof. North County identifies the relevant market as New York City. North County alleges a conspiracy or some agreement among Verizon, VNY, and/or its affiliates to corner the telecommunications market in New York City. North County alleges that such conspiracy damages it. The *first* cause of action properly alleges a state claim.

The *second* cause of action alleges violation of New York Public Service Law. This law prohibits the practice of providing preferential treatment for certain corporations and prejudicial treatment against others. North County, in sum, is alleging it was treated worse by Verizon than others in like positions. The *second* cause of action properly alleges a state claim.[1]

---

**1.** This is not to say that North County's claims

would not be dismissed in New York State

### B. Interconnection Agreement does not Mandate Federal Law or Forum

Even if an interconnection agreement were entered into, and its terms did govern disputes between the parties, it is not entirely clear that a New York State court would not be the proper forum to resolve the parties' differences. Verizon has submitted a copy of, presumably, the interconnection agreement that would have been entered into by the parties. The following appears under "29.5 Choice of Law":

> The construction, interpretation and performance of this Agreement shall be governed by and construed in accordance with the laws of the state in which this Agreement is to be performed, except for its conflicts of laws provisions. In addition, insofar as and to the extent federal law may apply, federal law will control.

This section makes clear that not all disputes arising between parties to an interconnection agreement give rise to only federal claims in federal court. The first sentence leaves room for those disputes that may arise under applicable state law provisions. The provision does not say that all disputes arise under the Telecommunications Act, nor does it provide that all disputes will be resolved in a federal forum. If Verizon believes that all disputes do so arise, it could have said so in this clause.

The following appears under "29.9 Dispute Resolution": "Should [good faith] negotiations fail to resolve [a] dispute in a reasonable time, either Party may initiate an appropriate action in any regulatory or judicial forum of competent jurisdiction." Again, this clause does not mandate that all claims arising out of disputes between the parties will be federal in nature, nor does it require, as Verizon argued at the hearing on this matter, that a federal court, being more familiar with federal law, resolve disputes. The words used leave open the possibility that another court will have competent jurisdiction over a dispute between parties to an interconnection agreement, thus implying that state law claims are possible and contemplated.

### C. There is No Artful Pleading/Complete Preemption

Therefore, the only way that Verizon may maintain defense of this action in federal district court is if it can prove that a "corollary" to the well-pleaded complaint doctrine has been violated. There are two doctrines that can be considered "corollary" to the well-pleaded complaint rule— the "artful pleading" doctrine and the "complete preemption" doctrine.[2] A plaintiff has "artfully pleaded" a complaint

---

court. No opinion on dismissal is here presented, nor should any be inferred.

**2.** It is unclear whether the complete preemption doctrine is separate from the artful pleading doctrine, is the same as the artful pleading doctrine, or just falls under the artful pleading doctrine. Some courts indicate that they may be one and the same. *See Rivet,* 522 U.S. at 475, 118 S.Ct. 921 ("The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim"); *see also Freeman v. Burlington Broadcasters, Inc.,* 204 F.3d 311, 317 (2d Cir. 2000) ("Under the 'well-pleaded complaint'

rule, a state law complaint, filed in a state trial court, that tries to anticipate a defense of federal preemption will not support federal question removal jurisdiction, unless the limited doctrine of complete preemption applies. Under that doctrine, the plaintiff's state law claim, recharacterized pursuant to the 'artful pleading' rule, is said necessarily to arise under federal law, regardless of how the plaintiff has pled the claim") (internal citations omitted). Regardless, because neither doctrine, on its own or together with the other, can compel denial of North County's motion, they will be discussed as if separate.

where he or she omits pleading necessary federal questions. *Rivet*, 522 U.S. at 475, 118 S.Ct. 921 (quoting *Franchise Tax*, 463 U.S. at 22, 103 S.Ct. 2841). If it is demonstrated that a plaintiff has so pleaded, removal is proper even where no federal question appears on the face of the complaint. *Id.* "Because state and federal laws have many overlapping or even identical remedies and because generally we respect a plaintiff's choice between state and federal forums, [the artful pleading doctrine] to the well-pleaded complaint rule is necessarily a narrow one." *In re Agent Orange Product Liability Litigation*, 996 F.2d 1425, 1430–31 (2d Cir.1993). Somewhat relatedly, under the complete preemption doctrine, "if it is determined that a particular area of state law is completely preempted, any claim grounded on such a preempted law is considered a federal claim and is properly removable to federal court." *Williams*, 482 U.S. at 393, 107 S.Ct. 2425; *Marcus*, 138 F.3d at 53. The preemptive force necessary to invoke the doctrine must be "extraordinary." *Williams*, 482 U.S. at 394, 107 S.Ct. 2425 (quoting *Taylor*, 481 U.S. at 65, 107 S.Ct. 1542).

There is nothing to suggest that North County has artfully pleaded its complaint. As noted above, it has alleged that Verizon engaged in certain acts that have remedies under the state law provisions pleaded. Though it is possible North County may have been able to bring its claims pursuant to federal law, it chose not to, and such discretion will not be disturbed.

Verizon has repeatedly asserted that it is not claiming that Congress, through passage of the Telecommunications Act, sought to completely preempt state law in the area of telecommunications. Neither law nor logic would support such a claim. Yet, Verizon's argument, that simply by virtue of the interconnection agreement between the parties the claim must be adjudged under the legislation giving rise to such relationship, necessarily implies complete preemption. First, Verizon's argument mischaracterizes the dispute between the parties. North County has admitted it has no qualms with Verizon over the terms of the interconnection agreement. It has no qualms with Verizon over the many clauses and duties outlined in the interconnection agreement. It has qualms with Verizon's conduct outside of the agreement.

Second, if Verizon's argument were to be taken as true, then every dispute arising between companies that are parties to an interconnection agreement would necessarily have to be resolved under the Telecommunications Act for the sole reason that such legislation created their relationship. North County could thus not bring allegations of monopolistic practices against Verizon, but another party could so long as the other party was not subject to an interconnection agreement. Presumably, all smaller companies are parties to interconnection agreements. Thus, under Verizon's theory, no smaller companies could bring a state law claim against it. Insofar as it pertains to disputes between companies that are parties to interconnection agreements, the Donnelly Act would be completely preempted, even though the interconnection agreement itself, like the one here, can be read to allow state law claims. This was clearly not the intention of Congress. It is completely foreseeable that disputes between parties may arise that have nothing to do with the terms of an interconnection agreement, and in no way implicate federal law. Congress did intend by the legislation to increase competition and allow smaller companies to do business in markets traditionally controlled by larger companies. It did not, however, intend to eviscerate the smaller

company's state law rights by pigeonholing it into only federal courts. Verizon cannot so immunize itself from state suit.[3]

## IV. *CONCLUSION*

The plaintiff's well-pleaded complaint alleges only state law claims. Such claims are neither artfully pleaded or completely preempted by federal law. The interconnection agreement itself, if in fact it does control, does not mandate that federal claims be asserted in federal court. No subject matter jurisdiction exists. This case must be remanded to the Supreme Court of New York.

Accordingly, it is

ORDERED that

1. Plaintiff North County Communications Corporation's motion to remand is GRANTED; and

2. The case is remanded back to the Supreme Court of New York, County of Albany.

IT IS SO ORDERED.

---

**3.** Verizon has argued passionately that North County's claims, if they have merit at all, arise under federal law. It has argued that state law would afford North County absolutely no avenue of relief. If Verizon is truly more certain that the claims have no merit under state law, it would seem to be in the client's best interest, and in the interests of time and money, to allow the claims to be remanded back to state court, and then file a motion to dismiss there.