ASSOCIATES CAPITAL SERVICES
CORPORATION OF NEW
JERSEY, Plaintiff,

v.

FAIRWAY PRIVATE CARS,
INC., Defendant.

FAIRWAY PRIVATE CARS,
INC., Plaintiff,

v.

MOTOROLA COMMUNICATIONS &
ELECTRONICS, INC.; Motorola Inc.;
Associates Capital Services Corpora-
tion of New Jersey, Defendants.

Nos. CV 81–3965, CV 81–4024.

United States District Court,
E.D. New York.

April 28, 1982.

Bragar, Spiegel, Schulman, Rubin & Driggin, New York City, for Associates Capital Services Corp. and Motorola Communications et al.

Friend, Dorfman & Marks, New York City, for Fairway Private Cars.

## MEMORANDUM AND ORDER

PLATT, District Judge.

This is a motion by the defendants in the second of the above-captioned actions, Motorola Inc. (Motorola) and Motorola Communications & Electronics, Inc. (MCEI), to dismiss three counts of the four count complaint, and by defendant Associates Capital Services Corp. (Associates) to dismiss all four counts of the complaint on a variety of grounds.

Despite the seemingly multifaceted nature of this case, both of the complaints in these consolidated actions arise essentially from a relatively simple set of facts. Fairway Private Cars, Inc. (Fairway), the defendant in the first action and plaintiff in the second action, entered into a conditional sales contract with MCEI and Motorola in June, 1979 for the purchase of two-way mobile radios and related equipment. In June, 1980 a lease for additional equipment was signed by the same parties. Both the contract and the lease were subsequently assigned to Associates in December, 1979 and September, 1980, respectively.

In August, 1981, Fairway failed to make payments allegedly due under the terms of the contracts to Associates. Associates accelerated the balance due under both contracts and sought $259,947.20 from Fairway.

During the time that Fairway had possession of the radios and equipment, it had complained to Motorola and MCEI of defects which said defendants had unsuccessfully tried to correct. At some unspecified time, Fairway complaining of breach of warranties offered to return the merchandise and sought repayment of the $96,-371.90 it had previously paid to the defendants.

Associates brought its action for breach of contract on December 8, 1981. On December 11, 1981, Fairway brought its action against Motorola, MCEI and Associates alleging in count 1, breach of warranty; in count 2, use of deceptive acts and practices in violation of section 349 of the New York General Business Law; in count 3, restraint of Fairway's right to freely engage in business in violation of the New York State antitrust law, section 340 of the New York General Business Law (Donnelly Act); and in count 4, breach of the duty of fair dealing and good faith.

By order of this Court dated March 16, 1982, the two actions were consolidated.

Associates, Motorola and MCEI now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the deceptive trade practice and Donnelly

Act counts of the complaint for failure to state claims upon which relief can be granted. Associates makes the same motion solely on its own behalf as to the bad faith dealing count. Motorola and MCEI also move to dismiss the bad faith dealing count on the basis of Fairway's alleged failure to provide a short, plain statement pursuant to Rule 8(a) of the Federal Rules of Civil Procedure. Finally, Associates seeks a dismissal of the breach of warranty count, and argues that Fairway be required to reassert this claim in its answer to Associates' action for breach of contract against Fairway as an offset only.[1]

### I—Donnelly Act Claim

Fairway's complaint alleges that the defendants conspired in violation of New York State's antitrust law, the Donnelly Act,[2] to

> "restrain and inhibit plaintiff from purchasing suitable radio equipment and financing for same from their sources and to coerce and compel plaintiff to continue to do business with defendants and to continue to make payments to defendant Associates even though said defendants knew or had reason to know that the [radio] system acquired by plaintiff was inoperable, and, despite repeated efforts by defendant MCEI, would not be made

operable or suitable for plaintiff's purposes."

Complaint ¶ 27.

Fairway sets forth four specific acts committed by the defendants in furtherance of their alleged conspiracy:

1. MCEI and Motorola stated they would not further service or repair the inoperable radio system until Fairway paid to Associates the full amount of $259,947.20.

2. MCEI and Motorola wrongfully refused to provide repair service despite the existence of a maintenance service contract purchased by Fairway.

3. MCEI threatened removal of an antennae from Motorola's Burlington site without which Fairway could not operate its business.

4. Associates, knowing of the breaches by Motorola and MCEI declared the full $259,947.20 due payable.

Fairway states that the purpose of defendants' "conspiratorial" acts was to prevent it from purchasing radio equipment elsewhere, and conclude that this conspiracy necessarily "had a serious and substantial anticompetitive effect and constitutes an unlawful restraint of trade." Complaint ¶ 29.

---

1. At the time Associates and the other defendants filed this motion, they argued that Fairway's complaint must be asserted as a compulsory counterclaim to Associates' previously filed action for breach of contract (CV 81–3965). In apparent anticipation of success on that motion and a decision by this Court that the Fairway complaint be denominated as a counterclaim, Associates sought a ruling that any recovery for breach of warranty successfully asserted against it be limited as an offset to the amounts of the contracts assigned to it by Motorola and MCEI which it seeks to recover in its action against Fairway.

As a result of this Court's decision to consolidate the actions, allowing each to retain its identity, Associates has altered slightly the nature of its motion to that set forth in the text of this opinion.

2. The Donnelly Act, codified as section 340 of the New York General Business Law provides in pertinent part:

§ 340. **Contracts or agreements for monopoly or in restraint of trade illegal and void**

1. Every contract, agreement, arrangement or combination whereby

A monopoly in the conduct of any business, trade or commerce or in the furnishing of any service in this state, is or may be established or maintained, or whereby

Competition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state is or may be restrained or whereby

For the purpose of establishing or maintaining any such monopoly or unlawfully interfering with the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state any business, trade or commerce or the furnishing of any service is or may be restrained, is hereby declared to be against public policy, illegal and void.

N.Y.Gen.Bus.Law § 340 (McKinney 1968).

The thrust of defendants' argument is aimed at whether Fairway has properly asserted a claim under the Donnelly Act. They seek dismissal of this court of the complaint on the ground that if an antitrust action lies here at all, it must be asserted under the Sherman Act, 15 U.S.C.A. § 1. Because we do not read this complaint as sufficiently stating a claim upon which relief could be granted under either the Donnelly Act or the Sherman Act, we do not find it necessary to decide whether this claim should be asserted under Sherman or Donnelly or whether it could be asserted under both of these Acts.

We do note that the Donnelly Act may well forbid conduct that would not violate the Sherman Act. *State v. Mobil Oil Corp.*, 38 N.Y.2d 460, 461, 381 N.Y. S.2d 426, 344 N.E.2d 357 (1976). Nonetheless, the Donnelly Act is patterned after the Sherman Act and governed by its standards. *See id.* at 463, 381 N.Y.S.2d 426, 344 N.E.2d 357; *Optivision, Inc. v. Syracuse Shopping Ctr. Assoc.*, 472 F.Supp. 665, 680–81 (S.D.N.Y.1979); *Hsing Chow v. Union Central Life Ins. Co.*, 457 F.Supp. 1303, 1308 (E.D.N.Y.1978). These statutes are designed to protect competition and redress the anticompetitive effects of a variety of unlawful business practices. They are not general prohibitions of all types of activity which may result in economic harm to any individual business. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701; *Brown Shoe Co. v. United States*, 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962); *Havoco of Amer., Ltd. v. Shell Oil Co.*, 626 F.2d 549, 554 (7th Cir.1980); *Matter of Aimcee Wholesale Corp.*, 21 N.Y.2d 621, 625–26, 289 N.Y.S.2d 968, 237 N.E.2d 223 (1968); *Schlottman Agency Inc. v. Aetna Casualty & Surety Co.*, 70 A.D.2d 1041, 417 N.Y.S.2d 561 (4th Dep't 1979).

Absent an allegation of acts that would constitute a per se violation of the Sherman Act, plaintiffs must allege that they have suffered a competitive injury in a relevant market as a result of defendant's "conspiracy". *Havoco of Amer., Ltd. v.*

*Shell Oil Co., supra,* 626 F.2d at 555. The failure to allege such injury may be viewed as either a "lack of standing or [as] the absence of *antitrust* damages." *GAF Corp. v. Circle Floor Co. Inc.*, 463 F.2d 752, 757–58 (2d Cir.1972). Under either analysis, the result is the same and dismissal is required.

For the purposes of this motion, we presume the allegations of the complaint to be true. *Jones-Bey v. Caso*, 535 F.2d 1360, 1362 (2d Cir.1976); *Fine v. City of New York*, 529 F.2d 70, 75 (2d Cir.1975); *J. Baranello & Sons v. Hausmann Industries, Inc.*, 86 F.R.D. 151, 158 (E.D.N.Y. 1980); *Trustees of the Pension Fund v. Trident Investment Mgmt.*, CV 81–2473 (E.D.N.Y. Feb. 17, 1982). We thus assume the existence of a conspiracy and that the defendants engaged in the four acts alleged solely for the purpose of wrongfully compelling Fairway to pay to the defendants monies claimed due by Associates under the contracts. Nevertheless, Fairway has failed to allege any effect which those acts had in lessening competition in any relevant market. Indeed Fairway has failed to set forth any market that may be affected here at all.

Fairway is undoubtedly unhappy with the defendants alleged acts in this case, but it "must show something more than simply an adverse effect on [its] own business," *DeVoto v. Pacific Fid. Life Ins. Co.*, 618 F.2d 1340, 1344 (9th Cir.), *cert. denied,* 449 U.S. 869, 101 S.Ct. 206, 66 L.Ed.2d 89 (1980), in order to sustain this claim under the antitrust laws. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., supra.*

Fairway has seized upon the language of the Donnelly Act which declares unlawful "Every contract, agreement, . . . whereby . . . the *free exercise of any activity* in the conduct of any business . . . is or may be restrained." N.Y.Gen.Bus.Law § 340 (emphasis added). It appears to be arguing that the Donnelly Act is *so* much broader in application than the Sherman Act that it reaches all behavior that restrains any business activity regardless of the effect on competition. The "free exercise" lan-

guage that Fairway seeks to employ must be read in the context of the statute as a whole. In *Schlottman Agency Inc. v. Aetna Casualty & Surety Co.*, 70 A.D.2d 1041, 417 N.Y.S.2d 561 (4th Dep't 1979), the court discussed the sufficiency of a complaint in relation to the "free exercise" language. It found in that case that not only did the defendants' activities interfere with the free exercise of plaintiff's business but that this interference had the effect of eliminating competition. *Id.* at 1042, 417 N.Y.S.2d 561.

Thus, while the Donnelly Act may well be endowed with scope and breadth beyond the Sherman Act, we do not believe the Act as a whole, and the "free exercise" language in particular has been read by the New York courts as transforming every alleged economic wrongdoing into an antitrust violation.

We are compelled to dismiss the antitrust count of this complaint, but do so without prejudice to Fairway to move to amend the complaint following discovery and upon the submission of a proposed amended complaint which properly asserts the injury to competition in a relevant market resulting from the acts of Associates, MCEI and Motorola.

## II—Deceptive Acts and Practices Claim

Fairway alleges that those same acts which constitute a basis for a claim of breach of warranty also constitute a basis for a claim of deceptive trade practices under section 349 of the New York General Business Law (GBL § 349).[3]

---

3. Section 349 of the New York General Business Law provides:

§ 349. Deceptive acts and practices unlawful

(a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

(b) Whenever the attorney general shall believe from evidence satisfactory to him that any person, firm, corporation or association or agent or employee thereof has engaged in or is about to engage in any of the acts or practices stated to be unlawful he may bring an action in the name and on behalf of the people of the state of New York to enjoin such unlawful acts or practices and to obtain restitution of any moneys or property obtained directly or indirectly by any such unlawful acts or practices. In such action preliminary relief may be granted under article sixty-three of the civil practice law and rules.

(c) Before any violation of this section is sought to be enjoined, the attorney general shall be required to give the person against whom such proceeding is contemplated notice by certified mail and an opportunity to show in writing within five business days after receipt of notice why proceedings should not be instituted against him, unless the attorney general shall find, in any case in which he seeks preliminary relief, that to give such notice and opportunity is not in the public interest.

(d) In any such action it shall be a complete defense that the act or practice is, or if in interstate commerce would be, subject to and complies with the rules and regulations of, and the statutes administered by, the federal trade commission or any official department, division, commission or agency of the United States as such rules, regulations or statutes are interpreted by the federal trade commission or such department, division, commission or agency or the federal courts.

(e) Nothing in this section shall apply to any television or radio broadcasting station or to any publisher or printer of a newspaper, magazine or other form of printed advertising, who broadcasts, publishes, or prints the advertisement.

(f) In connection with any proposed proceeding under this section, the attorney general is authorized to take proof and make a determination of the relevant facts, and to issue subpoenas in accordance with the civil practice law and rules.

(g) This section shall apply to all deceptive acts or practices declared to be unlawful, whether or not subject to any other law of this state, and shall not supersede, amend or repeal any other law of this state under which the attorney general is authorized to take any action or conduct any inquiry.

(h) In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice and to recover his actual damages or fifty dollars, whichever is greater. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff. N.Y.Gen.Bus.Law § 349 (McKinney Supp.1980–81).

That law is modelled essentially after the Federal Trade Commission Act of 1915, 15 U.S.C. § 45 (FTC Act), and the statute itself provides that compliance with the FTC Act is a complete defense to actions under the GBL. As a result, the New York State Courts have looked to FTC Act case law in interpreting GBL § 349. *See Lefkowitz v. Colorado State Christian College,* 76 Misc.2d 50, 346 N.Y.S.2d 482, 487–91 (Supreme Ct.N.Y.Co.1973).

The problem before this Court is·more complex than that however as the FTC Act does not give a private right of action to injured parties. Thus, while there is federal case law that deals with the illegality of deceptive advertising, we have found no cases in which the FTC has ruled that advertising directed to one specific customer in which a breach of warranty also occurred was sufficient to warrant issuance of a cease and desist order or other action by the Federal Trade Commission.

The allegation here is not that Motorola's and MCEI's advertising was deceptive as to the public, or even·likely to deceive the public as a whole, but rather that their advertising deceived this plaintiff/purchaser, Fairway.

The defendants look toward Massachusetts State law in support of their motion to dismiss. The Massachusetts cases do provide guidance in this area as they too rely upon the FTC Act standard. But as they make clear, each case must be determined on the basis of its facts and circumstances, *Levings v. Forbes & Wallace, Inc.,* 8 Mass.App. 498, 396 N.E.2d 149, 153 (1979).

Defendants argue that not every breach of warranty can be interpreted as "immoral, unethical, oppressive or unscrupulous," 29 Fed.Reg. 8325, 8355 (1964) and thus within the framework of acts falling under the jurisdiction of the Federal Trade Commission. *See Levings v. Forbes & Wallace Inc., supra.*

We agree. But this does not mean that any given breach of warranty or representation made in conjunction with a warranty might not be "immoral, unethical, oppressive or unscrupulous" as to constitute a violation of GBL § 349. In at least two state cases, courts have held that a breach of warranty also constituted a violation of the state consumer protection laws. *See Linthicim v. Archambault,* Slip op. No. 2661 (Mass.Sup.Jud.Ct. Dec. 19, 1979) ("The judge's finding that there was a material and substantial breach of warranty provides the plaintiff with ample basis for recovery under [the State deceptive acts and practices statute. Mass.G.L.C. 92A § 11.]"); *Haner v. Quincy Farm Chemicals, Inc.,* 29 Wash.App. 93, 98–103, 627 P.2d 571, 575–77 (1981) (breach of warranty of merchantibility violates Washington Consumer Protection Act, R.C.W. 19.86.-090).[4]

■ At this juncture we do not believe that Fairway's claim can be dismissed out of hand. Fairway may be able and should be given the opportunity to show that the inducements to buy the radio system and representations made by Motorola and MCEI were deceptive under New York's General Business Law.

The complaint does fail however to assert any unfair or deceptive act committed by Associates regarding the purchase of the radios and equipment by Fairways. Thus, defendant's motion to dismiss is denied as to Motorola and MCEI and is granted as to Associates.

### III—*Bad Faith Dealing*

Associates moves to dismiss that count of the complaint that alleges defendants breached the duty of fair dealing for failure to state a claim upon which relief can be granted.· Motorola and MCEI move to dismiss this count for failure to conform to the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. .

**4.** See Leaffer & Lipson, *Consumer Actions Against Unfair or Deceptive Acts or Practices: The Private Uses of Federal Trade Commission Jurisprudence,* 48 GEO.WASH.L.REV 521 (1980) for a discussion of application of FTC act case law to state unfair and deceptive practices statutes.

■ Under New York State law a covenant of fair dealing and good faith is implied in all contracts. *Kirke La Shelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79, 188 N.E. 163 (1933); *Collard v. Incorp. Village of Flower Hill*, 75 A.D.2d 631, 427 N.Y. S.2d 301 (2d Dep't 1980). "The covenant is breached only where one party to a contract seeks to prevent its performance by, or to withhold its benefits from, the other." *Id.* at 632, 427 N.Y.S.2d at 302.

■ In the complaint, Fairway alleges those acts which comprise the breach of warranty and antitrust counts as constituting a breach of duty of fair dealing by all three defendants.

There are, as we read the complaint, possibly four contracts involved in this action: 1) the sales contract, and 2) the lease of radios and related equipment which lie at the heart of the complaint, 3) the service contract purchased by Fairway from Motorola and MCEI which Motorola and MCEI allegedly threatened to refuse to honor, and 4) possibly some kind of lease and/or maintenance agreement regarding the antennae at the Burlington site which Motorola and MCEI allegedly threatened to abrogate.

With regard to the third above-mentioned contract, we have no difficulty in finding that Fairway has stated a claim against Motorola and MCEI. The fourth agreement is far too ambiguously set forth in the complaint for this Court, and more importantly, for the defendants to know whether or not a contract of any kind even existed.

The first two contracts, the sale and the lease, require further discussion. Assuming that the implied covenants of good faith in the sale and lease contracts were breached, they were breached by Motorola and MCEI not by Associates. Associates' only action in regard to those contracts was the acceleration of payments due upon the default of Fairway. Associates does not breach its duty of good faith and fair dealing by exercising its rights under the contracts. *Broad v. Rockwell Intern. Corp.*, 642 F.2d 929, 957 (5th Cir.1981); *Neuman v. Pike*, 591 F.2d 191, 195 (2d Cir.1979); *Mutual Life Ins. Co. v. Tailored Women*, 309 N.Y. 248, 254, 128 N.E.2d 401, 403 (1955).

Motorola and MCEI however had a duty to act in good faith in standing behind their warranties. Their alleged threats to withhold services and obligations and their alleged provision of defective merchandise have been sufficiently pleaded.[5]

Thus, the motion to dismiss the bad faith dealing count is granted as to Associates and denied as to Motorola and MCEI.

IV—*Associates' Limitation in Breach of Warranty Action.*

Associates argues that the assignment of the sales contract and lease to it from Motorola and MCEI were assignments of rights only and not a delegation of duties under those contracts.

Thus, Associates claims, the breach of warranty count of the complaint asserted against it must be dismissed to be pleaded by Fairway as an offset[6] only to Associates' claim of breach of contract.

5. Motorola and MCEI attempt to argue that "as to the contract and the lease sued on by Associates [in its action, and by Fairway] in this case, they were assigned by MCEI to Motorola and by Motorola to Associates long before the time when the alleged bad faith conduct took place. Accordingly, since MCEI and Motorola were no longer performing under the contract and lease, they had no duty of good faith with respect thereto."
Defendant's Reply Memo. at 44–45.
This argument is somewhat disingenuous. Associates in seeking to have its warranty damages limited to an offset argues with the knowledge and consent of Motorola and MCEI, that it was assignee of the rights and not delegatee of the duties under the sales contract and lease. Motorola and MCEI simply cannot have it both ways. Either the entire contract was assigned to Associates or merely Motorola's and MCEI's rights under the contract were assigned. Since we indicate below that the assignment to Associates was one of rights alone, we find that Motorola and MCEI retained their duties and obligations of performance under the contracts.

6. Although Associates makes reference to an "offset", Fairway's defensive claim is not unrelated to Associates' affirmative claim and hence "recoupment" is the technically correct label for

Fairway argues that its claim against Associates is not merely an offset, but an affirmative claim as Associates assumed not merely the rights but the duties of the contracts assigned by Motorola and MCEI. Fairway quotes the language of assignment from the sales contract which is nearly identical to that of the lease and which reads as follows:[7]

> For value received we [Motorola, Inc.] hereby sell and assign to its successors and assigns, this conditional sale contract [lease] together with all our right title and interest in the property therein described, and all rights and remedies thereunder, including the rights to collect all installments due and to become due thereon and in assignee's own behalf or in our name to take any and all proceedings we might otherwise take.

Fairway contends further that this language can only be read as an assignment of rights and a delegation of duties under Section 2–210(4) of the Uniform Commercial Code (UCC). That section provides:

> (4) An assignment of "the contract" or of "all my rights under the contract" or an assignment in similar general terms is an assignment of rights and unless the language or the circumstances (as in an assignment for security) indicate the contrary, it is a delegation of performance of the duties of the assignor and its acceptance by the assignee constitutes a promise by him to perform those duties. This promise is enforceable by either the assignor or the other party to the original contract.

N.Y. UCC § 2–210(4) (McKinney 1964).

We believe that Fairway's interpretation is incorrect. We note that Fairway itself alleges in its complaint that Associates is merely a finance company. Complaint ¶ 10. Secondly, we note that throughout the course of dealing between Fairway and the defendants, including that time subsequent to the assignment of the contracts (December 27, 1979 and September 26, 1980, respectively, for the sale and the lease contracts) Fairway looked solely to Motorola and MCEI for performance under the contracts, and indeed Motorola and MCEI attempted to correct defects in the radios and equipment in response to Fairway's complaints. *Id.* ¶ 18.

■ We think that these facts, as pleaded in Fairway's complaint, establish the type of circumstances provided for in UCC 2–210(4) which would indicate that this assignment was an assignment solely of rights and not a delegation of duties. Accordingly, we find that Fairway's recovery against Associates on the breach of warranty claim, should there be a finding of liability and damages against the defendants, would be limited as to Associates to the amounts it seeks to recover from Fairway. Fairway's claim for breach of warranty against Associates need not be repleaded but may be denominated as a counterclaim to Associates' action. *See McMullen Leavens Co., Inc. v. L.I. Van Buskirk Co.* 275 A.D. 701, 87 N.Y.S.2d 355 (1st Dep't), *aff'd,* 299 N.Y. 784, 87 N.E.2d 682 (1949); *Pendarvis v. General Motors Corp.,* 6 UCC Rep.Serv. 457, 459 (Sup.Ct. Queens Co.1969) (affirmative action does not lie against assignee of rights of financing agreement).

In light of the foregoing, the motion seeking dismissal of the warranty, antitrust, deceptive acts and bad faith dealing counts is granted as to Associates; the antitrust count is hereby dismissed as to Motorola and MCEI as well; Fairway may move to amend the complaint to reassert an antitrust count following completion of discovery; and, Fairway's warranty claim against Associates is hereby denominated as an offset to Associates' claimed breach of contract in the first of the above-captioned cases; the motion is denied insofar as it seeks a dismissal of the deceptive acts

---

the type of pleading which Associates seeks to impose here. See 3 MOORE'S FEDERAL PRACTICE ¶ 13.02 n. 1 (1982).

7. The language of the lease differs slightly, though not substantively from the language in the sales contract. Lease language is noted in brackets.

and breach of duty of good faith counts as to Motorola and MCEI.

SO ORDERED.