*652 OPINION OF THE COURT
David Friedman, J.
When a car dealer sells a vehicle to a consumer via a retail installment contract and then assigns the contract to a finance company such company in collecting payments due on the contract is subject to any defenses the consumer has against the dealer. The issue presented by the matter now before the court is whether the rule is the same when the car dealer leases rather than sells the vehicle. In my view there is no reason to differentiate between the two situations and therefore the protection afforded a purchaser of a car should be extended to an individual who leases a car.[1]
On October 14, 1983 Popular Ford Sales Inc. (Popular Ford) and defendant lessees entered into a lease for a 1984 Ford Tempo. The lease states that when it is signed by both the lessor Popular Ford and the defendant lessees it will be assigned to plaintiff Ford Motor Credit Company (Ford Credit). Thus contemporaneously with the execution of the lease Popular Ford assigned the lease to plaintiff Ford Credit. The lease provision on assignment provides further that, "The Lessee agrees that Ford Credit will not have to make any repairs to or maintain the vehicle * * * or perform any other service that the Lessor has agreed to perform under this Lease. The Lessee will look only to the Lessor for these services.”
Defendants made the monthly payments required under the lease until February 1985. Upon the failure to make the February payment the balance due on the lease was accelerated. In addition Ford Credit recovered and sold the vehicle. Claiming that $3,894.15 remained due on the lease even after the sale, Ford Credit started this action to recover such sum. Defendants interposed an answer which alleged as a first counterclaim various negligent repairs by Popular Ford as well as another Ford dealer.
Ford Credit now moves for an order dismissing defendants’ first, second and third counterclaims and granting it summary judgment for the relief sought by its complaint. As to the second and third counterclaims defendants do not seek to sustain them and they are hereby dismissed.
In support of the motion to dismiss the first counterclaim *653 Ford Credit asserts that defendants have failed to state a cause of action. Ford Credit points out that it did not perform the repairs about which defendants complain. Ford Credit contends further that as to the repairs made by Popular Ford such work cannot give rise to a claim against Ford Credit since those repairs were made after the assignment and in any event maintenance of the vehicle was defendants’ responsibility.
In opposing the motion defendants submit an affirmation from their attorney in which he contends that if Popular Ford was liable for negligent repairs to and defects in the vehicle Ford Credit as its assignee could not escape liability. Concerning the fact that the affirmation comes from defendants’ attorney rather than defendants, the attorney explains that defendants currently reside in Italy. In response Ford Credit argues that the submission of an affirmation from the defendants’ attorney rather than an affidavit from defendants themselves ipso facto mandates that the motion should be granted.
Ford Credit accurately posits that it did not repair defendants’ vehicle; that under the lease it was not responsible to make repairs and that the repairs in issue all occurred after assignment of the lease. The issue that therefore emerges is whether an assignee of a motor vehicle lease agreement bears any liability for the conduct of the assignor. Stated otherwise if defendants have a viable claim against Popular Ford may such claim be asserted against Ford Credit when it seeks to collect money due under the lease.
Resolution of this issue warrants examination of General Obligations Law § 13-105 and UCC 9-318 (1). Section 13-105 provides, "Where a claim or demand can be transferred, the transfer thereof passes an interest, which the transferee may enforce by an action * * * in his own name, as the transferrer might have done; subject to any defense or counter-claim, existing against the transferrer, before notice of the transfer”. Similar provision is found in UCC 9-318 (1) which states,
"(1) Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale * * * the rights of an assignee are subject to
"(a) all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom; and
"(b) any other defense or claim of the account debtor against *654 the assignor which accrues before the account debtor receives notification of the assignment.”[2]
While sections 13-105 and 9-318 are not completely consistent the juxtaposition of the two sections shows that an assignee is subject to any claims and defenses arising under an assigned contract as well as claims and defenses arising outside of the contract provided those claims and defenses arose before notice of the assignment is given to a party standing in the shoes of the original contract vendee, i.e., defendants. In any event, even should the right to proceed against an assignee be considered more limited, it is established that where the claim against the assignee is related to the transaction out of which the assignment arose and even if the claim accrues after notice of the assignment, a defendant may interpose it against the assignee to the extent of an offset (Associates Capital Servs. Corp. v Fairway Private Cars, 590 F Supp 10, 17; James Talcott, Inc. v Winco Sales Corp., 14 NY2d 227, 233; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 3019:5, at 220).
There is no question that the counterclaim regardless of its merits relates to and arises from the original lease. Applying the foregoing principles to the motion to dismiss the counterclaim leads to the conclusion that as an offset to whatever Ford Credit may be entitled to collect on its main claim, the counterclaim states a cause of action and is immune from dismissal.
Ford Credit in arguing against such an outcome maintains that defendants agreed not to raise defenses against it. In this regard it is true that UCC 9-318 (1) disallows the assertion of defenses against an assignee where there has been an agreement not to do so. The difficulty with Ford Credit’s reliance on this type of argument is that defendants never agreed to refrain from asserting defenses against Ford Credit but only agreed to turn to Popular Ford for services.
In resolving the instant controversy there is another statutory enactment which is particularly instructive although it is not directly applicable. This refers to the Motor Vehicle Retail *655 Installment Sales Act (Personal Property Law § 301 et seq.). That Act in discussing retail installment contracts for the sale of automobiles provides in subdivision (9) of section 302 the following: "No retail instalment contract shall contain any provision by which the buyer agrees not to assert against an assignee a claim or defense arising out of the sale * * * The assignee of a retail installment contract or obligation shall be subject to all claims and defenses of the buyer against the seller arising from the sale notwithstanding any agreement to the contrary, but the assignee’s liability under this subdivision shall not exceed the amount owing to the assignee at the time the claim or defense is asserted against the assignee.”
In the motor vehicle sales context the Legislature of this State has thereby expressly opted to disallow an agreement not to assert defenses against an assignee. It is hard to conceive that a different approach is warranted in the lease context. Moreover, in the face of the clear disallowance in the sales context it hardly seems consistent with the covenant of fair dealing implied in all contracts to permit such practice in a contract to lease a vehicle (cf., Associates Capital Servs. Corp. v Fairway Private Cars, supra, at 16).
In sum Ford Credit’s motion for summary judgment on its complaint is unopposed and should be granted.[3] In opposition to the complaint is a counterclaim which, inter alia, alleges negligent repairs. Ford Credit seeks to dismiss it for failure to state a cause of action. As previously indicated to the extent the counterclaim seeks an offset it states a cause of action.
An issue nevertheless remains as to whether defendants have presented adequate support for their counterclaim because in seeking to sustain the counterclaim defendants submit an affirmation from their attorney rather than their own affidavit. Ordinarily such an affirmation by someone without personal knowledge would be insufficient to defeat the dismissal motion (cf., Sutton v East Riv. Sav. Bank, 55 NY2d 550, 553). However, the basis of the dismissal sought by Ford Credit is that as a matter of law the counterclaim could not stand. As such Ford Credit has misconstrued the applicable law. In addition it never by affidavit from someone with knowledge addressed the factual contentions of the counterclaim. In the face of these circumstances defendants’ failure to submit their own affirmation or that of someone else with *656 personal knowledge is not determinative (McDonald v Dudek, 100 AD2d 839; Coley v Michelin Tire Corp., 99 AD2d 795).
Accordingly, Ford Credit’s motion is granted to the extent that it seeks summary judgment on its complaint. The motion is otherwise denied with any ultimate judgment to await the outcome of what, if any, offset defendants are entitled to on their counterclaim.

. This opinion does not deal with the "Lemon Law” (General Business Law §§ 198-a, 198-b), which is a different source of protection for the consumer acquiring an automobile.

. As to UCC 9-318 it cannot be determined from the parties’ submissions whether it is applicable to the subject lease. Its applicability depends upon whether the lease is a security interest within the meaning of UCC 1-201 (37) (General Elec. Credit Corp. v Xerox Corp., 112 AD2d 30; Mileasing Co. v Hogan, 87 AD2d 961). This issue need not be resolved however because regardless of the applicability of section 9-318 its approach is informative.

. Ford Credit also seeks attorney’s fees which I award in the amount of $250.